[S.F. No. 22874. In Bank. Mar. 5, 1973.]

RICHARD HAMAN et al., Plaintiffs and Appellants, v.
COUNTY OF HUMBOLDT et al., Defendants and Respondents.

**COUNSEL**

Mathews, Traverse & McKittrick and Francis B. Mathews for Plaintiffs and Appellants.

Raymond W. Schneider, County Counsel, and Charles P. Selden, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**THE COURT.**—Plaintiffs Richard Haman, James Blum, Otto Krasch, Thomas Webster and Hunter's Offshore Enterprises, filed suit to recover the excess of property tax they paid on their fishing boats for the calendar year 1968 over the amount they would have been required to pay if their boats had been registered in California. The trial court found for the county, and all plaintiffs have appealed.

Until 1967 all fishing boats in Humboldt County were assessed at 24 percent of actual cash value. In 1967 the Legislature enacted section 227 of the Revenue and Taxation Code,[1] which lowered the assessment level for fishing boats registered in California to 1 percent of their actual cash value. Such registration is handled by the federal government, and provides one basis for proving that a boat has a tax situs within the county. Under the federal statute, a boat should be registered at the port nearest the residence of the owner.[2]

Plaintiffs were residents of California during 1968, but had previously

---

[1] Section 227 provides that:
"A documented vessel, as defined in Section 130, shall be assessed at one percent (1%) of its full cash value only if:
"(a) The port of documentation is in this state.
"(b) The vessel is engaged or employed exclusively:
"(1) In the taking and possession of fish or other living resources of the sea for commercial purposes, or
"(2) In instruction or research studies as an oceanographic research vessel."
Section 130 provides that a documented vessel is "any vessel which is required to have and does have a valid marine document issued by the Bureau of Customs of the United States . . . ."

[2] 46 United States Code section 17 provides that every vessel registered shall be registered as belonging to a stated port, "which port shall be deemed to be that at or nearest to which the owner, if there be but one, or if more than one, the husband or acting and managing owner of such vessel, usually resides."
Provision is made for change in the home port designation from time to time with the approval of the Commissioner of Customs. (46 U.S.C. § 18.)

registered their boats at ports in Oregon, Washington, and Alaska. Apparently, the boats were registered in California after the lien date in 1968. Plaintiffs concede that their boats had a tax situs in Eureka in 1968.[3] Since their boats were not registered in California, the county assessor demanded that they pay taxes aggregating $5,230.07 based on the normal assessment at 24 percent of actual cash value. Had they qualified under section 227 of the Revenue and Taxation Code, their aggregate tax would have been $248.50. They paid under protest.

At the trial there was evidence that the operation of fishing boats registered in other states in no way differed from that of boats registered in California. Plaintiffs had to satisfy the same licensing requirements and obey the same regulations as to amount of catch within state waters. The county conceded that the only difference between California-registered boats and boats registered in other states is the fact of registration. The boat owners contend that this classification violates the equal protection clause of the Fourteenth Amendment.

At the outset we must recognize that since we are dealing with a tax measure the state is to be accorded very great latitude. (*Lehnhausen* v. *Lake Shore Auto Parts Co.,* 410 U.S. 356 [35 L.Ed.2d 351, 93 S.Ct. 1001]; *Allied Stores of Ohio* v. *Bowers* (1959) 358 U.S. 522, 526-527 [3 L.Ed.2d 480, 484-485, 79 S.Ct. 437]; *Royster Guano Co.* v. *Virginia* (1920) 253 U.S. 412, 415 [64 L.Ed. 989, 990-991, 40 S.Ct. 560]; *Fox etc. Corp.* v. *City of Bakersfield,* 36 Cal.2d 136, 141-142 [222 P.2d 879]; *Tetreault* v. *Franchise Tax Bd.,* 255 Cal.App.2d 277, 282 [63 Cal.Rptr. 326].) Flexibility and variety of tax schemes are appropriate (*Tax Commissioners* v. *Jackson* (1931) 283 U.S. 527, 537 [75 L.Ed. 1248, 1255-1256, 51 S.Ct. 540, 73 A.L.R. 1464]; *Ohio Oil Co.* v. *Conway* (1930) 281 U.S. 146, 159 [74 L.Ed. 775, 781-782, 50 S.Ct. 310]; *Stebbins* v. *Riley* (1925) 268 U.S. 137, 142 [69 L.Ed. 884, 888, 45 S.Ct. 424, 44 A.L.R. 1454]), and the state may permissibly distinguish in favor of a given class (*Stebbins* v. *Riley, supra,* 268 U.S. at p. 142; *American Sugar Refining Co.* v. *Louisiana* (1900) 179 U.S. 89, 92 [45 L.Ed. 102, 103-104, 21 S.Ct. 43]). ▮ Tax statutes are generally not subjected to close scrutiny, and distinctions can be justified on the basis of administrative convenience and promotion of legitimate state

---

[3]Section 1138 of the Revenue and Taxation Code provides: "Vessels documented outside of this State and plying in whole or in part in its waters, the owners of which reside in this State, shall be assessed in this State."

The "home-port" doctrine is discussed at length in *Scandinavian Airlines System, Inc.* v. *County of Los Angeles,* 56 Cal.2d 11 [14 Cal.Rptr. 25, 363 P.2d 25].

interests. (*Carmichael* v. *Southern Coal Co.* (1937) 301 U.S. 495, 511-512 [81 L.Ed. 1245, 1254-1255, 57 S.Ct. 868, 109 A.L.R. 1327].)

In *Allied Stores of Ohio* v. *Bowers, supra,* 358 U.S. 522, the United States Supreme Court set down the governing principles with respect to exemptions. The state there had exempted from ad valorem property tax any property held in storage for a nonresident owner. Plaintiff contended that this exemption denied equal protection to resident owners of stored property. Noting that the state must justify such distinctions on a rational basis (358 U.S. at p. 527 [3 L.Ed.2d at p. 485]), the court upheld the tax statute because it could reasonably be said that the exemption would encourage the development of the warehouse business within the state: "[I]t has repeatedly been held and appears to be entirely settled that a statute which encourages the location within the State of needed and useful industries by exempting them, though not also others, from its taxes is not arbitrary and does not violate the Equal Protection Clause of the Fourteenth Amendment." (358 U.S. at p. 528 [3 L.Ed.2d at p. 485].)

In *Central R. Co.* v. *Pennsylvania* (1962) 370 U.S. 607 [8 L.Ed.2d 720, 82 S.Ct. 1297], the state allowed railroad companies that had tracks outside the state a reduction in the amount of property tax charged for their railroad cars based upon the amount of time those cars were outside the state, but denied a similar reduction to railroads that only had tracks within the state. The court sustained the tax because it felt that there were reasonable bases to treat the two differently, since railroads with tracks outside the state would be more likely to encounter taxes and other costs in other states. (370 U.S. at pp. 617-618 [8 L.Ed.2d at pp. 728-729].)

It is also clear that administrative difficulties can justify different treatment under a tax statute. In *Carmichael* v. *Southern Coal Co., supra,* 301 U.S. 495, the court upheld imposition of a social security tax that exempted employers of fewer than eight workers because the expense of collection from small employers could exceed the expected returns. (301 U.S. at pp. 511-512 [81 L.Ed. at pp. 1254-1255].)

There are, however, limits to the latitude afforded a state in demanding taxes. ■ The equal protection clause applies to tax measures. (*Wheeling Steel Corp.* v. *Glander* (1949) 337 U.S. 562, 571-572 [93 L.Ed. 1544, 1550-1551, 69 S.Ct. 1291]; *Concordia Ins. Co.* v. *Illinois* (1934) 292 U.S. 535, 549 [78 L.Ed. 1411, 1420, 54 S.Ct. 830]; *Liggett Co.* v. *Lee* (1933) 288 U.S. 517, 532 [77 L.Ed. 929, 935-936, 53 S.Ct. 481, 85 A.L.R. 699].) The distinction between classes drawn by a tax statute "must rest upon some ground of difference having a fair and substantial

relation to the object of the legislation." (*Royster Guano Co.* v. *Virginia, supra,* 253 U.S. 412, 415.)

In *Liggett Co.* v. *Lee, supra,* 288 U.S. 517, the state charged a license tax based on the number of stores owned. The fee for each store was smaller where all stores owned were within one county than where the stores owned were in more than one county. The court found that there was no reason for the different treatment because county lines do not relate in any significant way to any factor important in calculating the tax. (288 U.S. at pp. 533-535 [77 L.Ed. at pp. 936-937].)

 The discrimination between residents owning fishing boats documented in California and residents owning fishing boats documented in other states may not be justified on either the ground that the tax will promote local industry or the ground that it tends to eliminate double taxation. The place of registration with the federal government does not relate to the operation of the fishing boats. By placing the greater tax on the foreign documented boat, the tax, if anything, would tend to drive industry away from California. As to double taxation, the boat documented in another state and used in California faces a greater risk of double taxation than the boat documented in this state and used here.

The principal justification proffered by the county for the discrimination is that it is expensive to prove that a boat registered in another state is used in this state and is owned by a resident. Although, as pointed out above, administrative convenience may furnish a basis for discrimination as to taxes in a proper case, we are satisfied that in the instant case the difference in rates is so great that it may not be upheld. (Cf. *Mullaney* v. *Anderson,* 342 U.S. 415, 417-419 [96 L.Ed. 458, 461-462, 72 S.Ct. 428]; *Toomer* v. *Witsell,* 334 U.S. 385, 398-399 [92 L.Ed. 1460, 1472-1473, 68 S.Ct. 1157].) The state has demanded that plaintilffs pay 24 times the tax paid by other residents of California who either documented their boats at the time of purchase in California or who were subsequently permitted by the Commissioner of Customs to change the home port designation to a California port. To accept the discrimination made by the tax statute would require that we conclude that approximately 95 percent of the money taken in is consumed in administering the tax on plaintiffs and other residents whose boats are not documented in California.

In fixing the assessment the burden on the assessor is the same whether or not the boat is documented in California or another state. He must first value the boat whether the assessment rate is 24 percent or 1 percent. As the county points out, the burden on the assessor in determining whether the property is subject to tax is reduced when the boat is docu-

mented in California because he may then merely check the federal records. As to boats documented in other states, the assessor must check the harbor and determine the residence of the owner of boats found there. However, as to boats found to be taxable, this cost cannot justify the huge difference in assessment. Although the assessor may incur substantial additional expense with regard to boats ultimately determined not to have a tax situs in California, this cost is part of the enforcement costs of the entire statute and attributable to all boats subject to tax; the cost must be incurred even if the assessor ultimately concludes that none of the boats checked have a California tax situs, and such cost may not be fairly attributed solely to the boats found subject to tax which were registered in other states. In the circumstances the great difference in assessment percentages may not be upheld on the grounds of administrative convenience or expense.

■ In cases involving invalid differentials in tax treatment, the court has the *power* to eliminate the discriminatory treatment either by granting those taxpayers, who have been assessed the higher rate, a refund based on the difference between the lower rate and the one under which they were assessed, i.e., taxing all vessels at 1 percent, or by providing that in the future the board of equalization adjust the assessment rolls so that the higher rate will be applied to all like taxpayers. (*Security-First Nat. Bk.* v. *County of L. A.,* 35 Cal.2d 319, 322 [217 P.2d 946]; *Jones Lbr. Co.* v. *Del Norte County,* 251 Cal.App.2d 645, 650 [59 Cal.Rptr. 644].) In determining the proper remedy, we must adopt the one which will best further the legislative intent without increasing discrimination among other taxpayers.[4]

The main purpose of the 1 percent assessment is obviously to aid California's ailing fishing industry. The statute requires that as well as having a port of documentation within the state, the vessel must be ". . . engaged or employed exclusively: (1) In the taking and possession of fish or other living resource of the sea *for commercial purposes, . . .*" (Italics added.) The only other means in which a vessel can be employed and still qualify under section 227 is as an oceanographic research

---

[4]In *Security-First Nat. Bk.* v. *County of L.A., supra,* 35 Cal.2d at page 322. plaintiff's property had been classified as realty and thus subject to a special assessment, while similar property had been classified as personalty and not subject to the special assessment. In determining that the property of the petitioning taxpayer was indeed realty and that it was the other property which had been misclassified as personalty, we held that to allow the property of the petitioning taxpayer to be exempt from the special assessment, i.e., taxed at the lower rate, would increase the discrimination as to all other taxpayers paying the special assessment on their taxable realty.

vessel. ▋ The use of a vessel for fishing or for oceanographic research provides a significant basis for the legislative determination to distinguish those vessels from others. (Cf. Cal. Const., art. XIII, § 4 (exemption of certain vessels from local taxation).)

▋ We conclude that the legislative intent is properly carried out by holding invalid subdivision (a) of section 227, which requires that the port of documentation be within this state, and by upholding the balance of the section. Accordingly, plaintiffs are entitled to a refund.

The judgment is reversed with directions to enter judgment for plaintiffs in accordance with the views expressed above.