[No. B003698. Second Dist., Div. Seven. Nov. 28, 1984.]

CYNTHIA K. COHAN et al., Plaintiffs and Appellants, v.
H. B. ALVORD, as Tax Collector, etc., et al.,
Defendants and Respondents.

COUNSEL

Seider & Cohan and David G. Wills for Plaintiffs and Appellants.

De Witt W. Clinton, County Counsel, Lawrence B. Launer, Assistant County Counsel, and Jerald E. Wheat, Deputy County Counsel, for Defendants and Respondents.

OPINION

**THOMPSON, J.**—Plaintiffs Cynthia K. Cohan and Edward M. Cohan (appellants) filed this class action lawsuit on behalf of themselves and all others similarly situated[1] against Los Angeles County Tax Collector H. B. Alvord, Los Angeles County Assessor Alexander H. Pope, Los Angeles County Auditor/Controller Mark H. Bloodgood, and Los Angeles County (respondents), challenging the constitutionality of a state statute that authorizes the payment of interest on the amount of property tax refunded as a result of a reduction in assessed value by the board of equalization when the amount of interest is $10 or more.[2] Plaintiffs allege that section 5151 unconstitutionally discriminates against those taxpayers owning real property in Los Angeles County (County) who received refunds on property taxes after the assessment appeals board (AAB) reduced the assessed values of their real property, but who were not awarded interest because it was less than $10.

Respondents moved for summary judgment on the grounds that the action has no merit and that there are no triable issues of fact. (Code Civ. Proc., § 437c.) Appellants brought a cross-motion for partial summary adjudica-

---

[1]The class, certified on November 4, 1982, consists of owners of real property in Los Angeles County who between December 4, 1976, and May 13, 1981, received refunds on real property taxes after obtaining reductions in the assessed values of their property by the assessment appeals board, but who did not receive interest on their refunds.

[2]Revenue and Taxation Code section 5151 (section 5151) provides in pertinent part: "Interest at the rate of 9 percent per annum shall be paid, when that interest is ten dollars ($10) or more, on any amount refunded . . . as a result of the reduction of assessed value following an application for equalization. . . ." While the complaint challenges the constitutionality of Revenue and Taxation Code section 5150, rather than section 5151, the record establishes that it is section 5151 that is at issue.

tion of whether section 5151 violates the right to equal protection under federal and state law. The superior court upheld the constitutionality of section 5151 and entered summary judgment for respondents.

Appellants appeal from the summary judgment for respondents and also appeal from the denial of their motion for partial summary judgment. ■ We dismiss the portion of their appeal arising from the denial of their motion for partial summary judgment inasmuch as no appeal lies from the denial of summary judgment. (*Gurkewitz* v. *Haberman* (1982) 137 Cal.App.3d 328 [187 Cal.Rptr. 14].) For reasons discussed, we affirm the summary judgment entered for respondents.

## Statement of Facts

■ In determining an appeal from a summary judgment granted to a defendant, the court must accept as true the facts alleged in the plaintiff's complaint and affidavits. (*Miller* v. *Glass* (1955) 44 Cal.2d 359, 360 [282 P.2d 501]; *Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 825 [114 Cal.Rptr. 589, 523 P.2d 629].) In the instant case, respondents neither challenged the factual allegations of the complaint nor introduced additional evidence in support of their motion for summary judgment.

The complaint alleges the following facts: Appellants received a property tax refund after the AAB reduced the assessed value of their real property located in the County. No interest was paid on their refund; the parties agree that the interest due was less than $10. After unsuccessfully filing a claim for interest with the County on behalf of themselves and the class, this lawsuit was filed.

Respondents' responses to interrogatories[3] establish the method used by the County to calculate the interest due under section 5151:

"ANSWER TO INTERROGATORY NO. 1

"The following is the computer program logic for interest determination:

---

[3]The record is not clear as to whether appellants filed respondents' interrogatory responses solely in support of appellants' motion for partial summary judgment, or whether the inter-. rogatory responses were also filed in opposition to respondents' motion for summary judgment. The record shows that the interrogatory responses were admitted into evidence, without objection, at the joint hearing of both parties' motions for summary judgment. Accordingly, to give appellants the benefit of the doubt, we will consider the interrogatory responses in reviewing the instant summary judgment for respondents.

"1. *Step* *Function*

"1 Check a special code field on each refund transaction to determine if caused by AAB reduction.

"2 If so, calculate number of days for which interest is payable for 1st installment amount paid.

"3 Multiply interest rate times tax refund amount to obtain annualized amount.

"4 Divide annualized amount by 365 to arrive at daily interest payable.

"5 Multiply result of #4 by number of days interest earned (from Step 2).

"6 Repeat Steps 2 thru 6 for 2nd installment tax refund amount, if previously paid.

"7 If total interest amount is equal to or greater than $10, add interest amount to refund amount. Otherwise, ignore result."

Step seven of the computer program logic would be eliminated if section 5151's $10 interest classification is abolished. Under the County's present system, when interest is paid it is included in the same warrant issued to pay the tax refund.

### Equal Protection

Appellants claim that section 5151's $10 classification scheme violates the right to equal protection under the Fourteenth Amendment and state law. California's Constitution, which guarantees equal protection and requires the uniform operation of laws and prohibits special legislation (Cal. Const., art. I, § 7; art. IV, § 16), provides substantially the same protection and evokes substantially the same standards as under the Fourteenth Amendment. (*Serrano* v. *Priest* (1976) 18 Cal.3d 728, 762-763 [135 Cal.Rptr. 345, 557 P.2d 929]; *City of Los Angeles* v. *Shell Oil Co.* (1971) 4 Cal.3d 108, 120, fn. 8 [93 Cal.Rptr. 1, 480 P.2d 953]; *Dept. of Mental Hygiene* v. *Kirchner* (1965) 62 Cal.2d 586, 588 [43 Cal.Rptr. 329, 400 P.2d 321, 20 A.L.R.3d 361]; *County of L.A.* v. *Southern Cal. Tel. Co.* (1948) 32 Cal.2d 378, 388-389 [196 P.2d 773].)

It is well established that the party who challenges the constitutionality of a legislative classification scheme in a tax statute bears a very heavy burden. As our Supreme Court stated in *Haman* v. *County of Humboldt*

(1973) 8 Cal.3d 922, 925-926 [106 Cal.Rptr. 617, 506 P.2d 993]: "At the outset we must recognize that since we are dealing with a tax measure the state is to be accorded very great latitude. (*Lehnhausen* v. *Lake Shore Auto Parts Co.,* 410 U.S. 356 [35 L.Ed.2d 351, 93 S.Ct. 1001]; *Allied Stores of Ohio* v. *Bowers* (1959) 358 U.S. 522, 526-527 [3 L.Ed.2d 480, 484-485, 79 S.Ct. 437]; *Royster Guano Co.* v. *Virginia* (1920) 253 U.S. 412, 415 [64 L.Ed. 989, 990-991, 40 S.Ct. 560]; *Fox etc. Corp.* v. *City of Bakersfield,* 36 Cal.2d 136, 141-142 [222 P.2d 879]; *Tetreault* v. *Franchise Tax Bd.,* 255 Cal.App.2d 277, 282 [63 Cal.Rptr. 326].) . . . Tax statutes are generally not subjected to close scrutiny, and distinctions can be justified on the basis of administrative convenience and promotion of legitimate state interests. (*Carmichael* v. *Southern Coal Co.* (1937) 301 U.S. 495, 511-512 [81 L.Ed. 1245, 1254-1255, 57 S.Ct. 868, 109 A.L.R. 1327].)"

■ While the states are afforded great latitude in drawing distinctions between classes in drafting tax measures, the distinction "'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' [Citation.]" (*Haman* v. *County of Humboldt, supra,* 8 Cal.3d at pp. 926-927.) ■ And in "determining whether a challenged classification is rationally related to achievement of a legitimate state purpose, we must answer two questions: (1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose? [Citations.]" (*Western & Southern L.I. Co.* v. *Bd. of Equalization* (1981) 451 U.S. 648, 668-669 [68 L.Ed.2d 514, 530-531, 101 S.Ct. 2070].)

■ Appellants contend that section 5151's $10 classification scheme cannot be defended on the grounds of administrative convenience because the County could actually save money by eliminating the $10 test from its determination of interest. Respondents argue that the Legislature reasonably believed that the $10 classification scheme promotes administrative convenience throughout the state.

The issue before us is whether it was reasonable for the Legislature to believe that the use of the $10 classification scheme would promote administrative convenience.

In *Halford* v. *Alexis* (1981) 126 Cal.App.3d 1022 [179 Cal.Rptr. 486], the court upheld the constitutionality of the statutory scheme which converted the state vehicle license renewal system from a calendar year system to a staggered year-round system, effective as of the 1976 registration year. Plaintiffs alleged that the failure of the year-round registration plan to prorate the vehicle license fees violated the right to equal protection as to those vehicle owners whose registration year commenced in 1976 and extended

through 1977. The court upheld the classification scheme on the basis that the Legislature could reasonably conclude that the "use of the relatively innocuous classification would promote the changeover in the system of collecting VLFs [vehicle license fees]. . . . The statutory scheme certainly is not invidious in its discrimination. In fact, it is questionable whether Halford's complaint against the system [the difference in rates between classes of taxpayers ranged from $50 to $100 over a nine-year period, or about $5 to $11 per year] even rises to the level where the courts should interfere. The maxim 'de minimis non curiat lex' seems to control here. (See *Zumbrun* v. *University of Southern California* (1972) 25 Cal.App.3d 1, 11 [101 Cal.Rptr. 499, 51 A.L.R.3d 991]; *Continental Bank* v. *Phoenix Ins. Co.* (1972) 24 Cal.App.3d 909, 912 [101 Cal.Rptr. 392].)" (*Halford* v. *Alexis, supra,* 126 Cal.App.3d at p. 1032.)

However, in *Haman* v. *County of Humboldt* (1973) 8 Cal.3d 922 [106 Cal.Rptr. 617, 506 P.2d 993], the court rejected the legislative classification that discriminated between residents owning fishing boats registered in California and residents owning fishing boats registered in other states. The challenged statute assessed taxes at 24 percent of actual cash value against residents whose boats were not registered in California but assessed taxes at only 1 percent of actual cash value if the boats were registered in California. The court invalidated the portion of the statute requiring registration in California, stating: "The principal justification proffered by the county for the discrimination is that it is expensive to prove that a boat registered in another state is used in this state and is owned by a resident. Although, as pointed out above, administrative convenience may furnish a basis for discrimination as to taxes in a proper case, we are satisfied that in the instant case the difference in rates is so great that it may not be upheld. [Citations.] The state has demanded that plaintiffs pay 24 times the tax paid by other residents of California who either documented their boats at the time of purchase in California or who were subsequently permitted by the Commissioner of Customs to change the home port designation to a California port. To accept the discrimination made by the tax statute would require that we conclude that approximately 95 percent of the money taken in is consumed in administering the tax on plaintiffs and other residents whose boats are not documented in California." (*Id.,* at p. 927.)

In the instant case, the amount in disputed interest is less than $10 per taxpayer. We cannot conclude that this amount is so great as to be disproportionate to the administrative cost of calculating interest on refunds of sums that are either so small or held for such a short time that interest is less than $10. While the County under its current system might not incur any additional administrative expense if it were to calculate and pay interest of less than $10, it is reasonable for the Legislature to have taken into

account the different systems used by the other counties, especially those counties which do not use computers. For example, when the amount refunded falls below $220 and the length of time for which interest is due is six months or less, the amount of interest due need not even be calculated under section 5151 because it will be less than $10.

■ ■■■ Our decision herein is further supported by California law which requires a specific statutory provision to create governmental liability for interest on tax refunds. (*Ball* v. *County of Los Angeles* (1978) 82 Cal.App.3d 312, 316-317 [147 Cal.Rptr. 252].)[4] ■ A state's failure to authorize interest in de minimis amounts of less than $10 despite its authorization of interest of $10 or more is not violative of the constitutional right to equality of taxation. (Cal. Const., art. XIII, § 1; art. IV, § 16.) ■ "Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation." (*Carmichael* v. *Southern Coal Co., supra,* 301 U.S. 495, 509 [81 L.Ed. 1245, 1253].) "Obviously our Constitution does not require complete uniformity of taxation, since it exempts some property from taxation altogether, provides that solvent credits shall be taxed at a lower rate than that imposed on other classes of property, and provides that property on the unsecured rolls shall be taxed at the rate for the previous year and that on the secured rolls at the current rate. . . . [¶] . . . Exact equality is not possible under any system of taxation." (*People* v. *Keith Railway Equipment Co.* (1945) 70 Cal.App.2d 339, 350-351 [161 P.2d 244]; see also *Crocker-Anglo Nat. Bank* v. *Franchise Tax Board* (1960) 179 Cal.App.2d 591, 595 [3 Cal.Rptr. 906]; *Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1016 [106 Cal.Rptr. 867].)

■ Accordingly, we hold that the de minimis $10 classification scheme of section 5151 is reasonably related to the legitimate state interest of easing administrative burdens and is not violative of the right to equal protection under either federal or state law.

*Due Process*

■ Appellants argue that because they were required to pay real property taxes under protest prior to being granted a hearing before the AAB which reduced the assessed value of their property, section 5151 violated

---

[4]A state's power to tax is derived from its sovereign authority; the relationship between the state and the taxpayer is neither founded on nor creates any fiduciary or contractual rights or obligations. (*Helvey* v. *Sax* (1951) 38 Cal.2d 21, 24 [237 P.2d 269]; *Douglas Aircraft Co.* v. *County of L.A.* (1955) 137 Cal.App.2d 803, 806 [291 P.2d 85]; *Southern Service Co., Ltd.,* v. *Los Angeles* (1940) 15 Cal.2d 1, 11 [97 P.2d 963].)

their right to due process of law under the Fifth Amendment and article I, section 7 of the California Constitution. This argument fails.

■■■ As our Supreme Court stated in *Modern Barber Coll.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 725-726 [192 P.2d 916]: "The due process clause does not guarantee the right to judicial review of tax liability before payment. The power of a state to provide the remedy of suit to recover alleged overpayments as the exclusive means of judicial review of tax proceedings has long been unquestioned. (*Cary* v. *Curtis,* 3 How. [44 U.S.] 236 (11 L.Ed. 576); *Steinhagen Rice Milling Co.* v. *Scofield* (C.C.A. 5th) 87 F.2d 804; Note, 77 A.L.R. 629; see Plumb, *Tax Refunds Suits* v. *Collectors of Internal Revenue,* 60 Harv.L.Rev. 685.) This is also the law in this state: 'The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every tax-payer is entitled to the delays of litigation is unreason[able]. If the laws here in question involved any wrong or unnecessary harshness, it was for Congress, or the people who make Congresses, to see that the evil was corrected. The remedy does not lie with the judicial branch of the government.' (Shenk, J., in *People* v. *Skinner,* 18 Cal.2d 349, 355 [115 P.2d 488, 149 A.L.R. 299], quoting approvingly from *Springer* v. *United States,* 102 U.S. 586 [26 L.Ed. 253].)" (See also *Jillson* v. *Board of Supervisors* (1963) 221 Cal.App.2d 192, 196 [34 Cal.Rptr. 419].) "Due process is satisfied if notice and an opportunity to question the validity or the amount of the tax is provided at some stage in the proceeding." (*Dressler* v. *County of Alpine* (1976) 64 Cal.App.3d 557, 562 [134 Cal.Rptr. 554].)

■■■ Implicit in appellants' due process argument is the theory that the government exercises its power of eminent domain when it incorrectly overassesses a taxpayer and hence the government must pay just compensation in the form of interest for the taking of the property. There is no basis in law for such a theory. ■■■ "Under our constitution, private property may be taken for public use, either by the exercise of the right of eminent domain or by taxation. These are sovereign powers which are separate and distinct from each other, and the power which is conferred upon municipalities under the proceedings authorized by the act in question, as far as assessing the lands for special benefits are concerned, are referable solely to the exercise by the state of its sovereign power of taxation conferred upon municipalities as its governmental agents." (*Clute* v. *Turner* (1909) 157 Cal. 73, 79 [106 P. 240].)

"Taxation exacts money or services from individuals as, and for, their respective shares of contribution to any public burden. Private property taken for public use by right of eminent domain is taken not as the owner's share of contribution to a public burden, but as so much beyond his share.

Special compensation is therefore to be made in the latter case, because the Government is a debtor for the property so taken; but not in the former, because the payment of taxes is a duty and creates no obligation to repay otherwise than in the proper application of the tax." (*Emery* v. *San Francisco Gas Co.* (1865) 28 Cal. 345, 351.)

Appellants were afforded an AAB hearing which resulted in the refunding of the amount overtaxed. Thus appellants were not deprived of due process of law. While appellants have not briefed the issue of substantive due process, we assume that any such argument would be subsumed by our foregoing discussion concerning equal protection. (See *Minnesota* v. *Clover Leaf Creamery Co.* (1981) 449 U.S. 456, 470, fn. 12 [66 L.Ed.2d 659, 673, 101 S.Ct. 715].)

Accordingly, we hold that section 5151's $10 classification scheme is not violative of the due process clauses of the federal and state Constitutions.

The summary judgment for respondents is affirmed.

Lillie, P. J., and Johnson, J., concurred.