[No. C063437. Third Dist. Dec. 7, 2011.]

THE MORNING STAR COMPANY, Plaintiff and Appellant, v. BOARD OF EQUALIZATION et al., Defendants and Respondents.

738

**COUNSEL**

Law Offices of Brian C. Leighton and Brian C. Leighton for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Paul D. Gifford, Assistant Attorney General, William L. Carter and Molly K. Mosley, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**BUTZ, J.**—In this appeal, we uphold the validity of a regulation adopted by defendant Department of Toxic Substances Control (the Department)—California Code of Regulations, title 22, section 66269.1 (the Regulation)—which interprets its underlying statute, Health and Safety Code section 25205.6.[1] We also conclude that section 25205.6 imposes a constitutionally valid tax. Section 25205.6 imposes an annual charge on those types of businesses, with at least 50 employees, which use, generate, store, or conduct activities in California related to hazardous materials. (§ 25205.6, subds. (b), (c).)

We have seen this matter before; in fact, twice before. So too has the state Supreme Court. Contrary to our first opinion,[2] the Supreme Court subsequently concluded in *Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324 [42 Cal.Rptr.3d 47, 132 P.3d 249] (*Morning Star*) that the Department's broad interpretation of former section 25205.6—as applicable to essentially all corporations with at least 50 employees, given that most modern office equipment contains hazardous materials—constituted a "regulation" subject to the formal rulemaking procedures of the Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.). (*Morning Star*, at pp. 332, 334, 342 [when *Morning Star* was decided, former § 25205.6 applied only to *corporations*; the statute was amended in 2006 to apply essentially to all *business organizations*, not just corporations (Stats. 2006, ch. 77, § 13, p. 1499, eff. July 18, 2006; Stats. 2006, ch. 344, §§ 1, 2, p. 313, eff. Sept. 20, 2006)].) The Regulation was the result of *Morning Star*. (Cal. Code Regs., tit. 22, § 66269.1, Register 2007, No. 45 (Nov. 7, 2007).)

Our second opinion[3] in this matter concerned two questions left open in *Morning Star*, plus the issue of the Regulation's consistency with section 25205.6. (*Morning Star, supra*, 38 Cal.4th at pp. 332, 342.) In that second opinion, we concluded that (1) the Regulation is consistent with section 25205.6; (2) section 25205.6 imposes a tax rather than a regulatory fee; and (3) this tax does not violate equal protection or substantive due process.

This case is now before us for the third time. The Supreme Court granted review of our second opinion (see fn. 3, *ante*), and directed us to vacate that

---

[1] Undesignated statutory references are to the Health and Safety Code.

[2] *Morning Star Co. v. State Bd. of Equalization* ▮ (Cal.App.).

[3] *The Morning Star Co. v. Board of Equalization* ▮ (Cal.App.).

decision and "reconsider the cause in light of *California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 437–440 [121 Cal.Rptr.3d 37, 247 P.3d 112]" (*California Farm Bureau*), which as relevant here concerned whether the statute at issue there imposed a fee or a tax. We have now reconsidered the matter in light of *California Farm Bureau*, and reach the same three conclusions that we did in our second opinion.

Consequently, we shall once again affirm the judgment, which concluded likewise.

## FACTUAL AND PROCEDURAL BACKGROUND

Instead of reinventing the wheel, we will draw much of our background from that provided in *Morning Star, supra,* 38 Cal.4th 324, with references to the current version of section 25205.6 (Stats. 2006, ch. 77, § 13, p. 1499, eff. July 18, 2006).

This case concerns an annual charge imposed on businesses that was enacted in 1989 as part of a comprehensive overhaul of state law concerning hazardous materials. (*Morning Star, supra,* 38 Cal.4th at p. 328.)

The charge works as follows. Pursuant to section 25205.6, subdivision (b), each year the Department must provide California's Board of Equalization (the Board) with a schedule (i.e., a list) of business classification codes that identifies the " 'types of [businesses] that use, generate, store, or conduct activities in this state related to hazardous materials.' "[4] (*Morning Star, supra,* 38 Cal.4th at p. 327.) If a business has 50 or more employees in this state and falls within one of the listed codes, it must pay a graduated annual charge based on how many employees it has. The charge, which ranges from the hundreds to the thousands of dollars, is deposited in the state's Toxic Substances Control Account, to be disbursed to various programs relating to the control of hazardous materials. (§ 25205.6, subd. (d); see also § 25173.6, subd. (b) [identifying programs funded by this account].) (*Morning Star, supra,* 38 Cal.4th at pp. 327, 329.)

In the Regulation, the Department finds that "every" nonexempted "business in California with fifty or more employees uses, generates, stores, or conducts activities in this state related to hazardous materials." (Cal. Code Regs., tit. 22, § 66269.1; see Health & Saf. Code, § 25205.6, subd. (b);

---

[4] As noted, before it was amended in 2006, section 25205.6 applied only to "corporations"; it now covers essentially all business organizations. (Stats. 2006, ch. 77, § 13, p. 1499; Health & Saf. Code, § 25205.6, subds. (a), (b).)

*Morning Star, supra*, 38 Cal.4th at p. 327.) The Department reasons that materials it regards as inherent in everyday business activity, such as fluorescent lightbulbs, batteries, inks, correction fluid, and toner used in printers and fax machines, constitute "hazardous materials," and that all qualifying companies " 'use, generate, store, or conduct activities' " related to these items. (*Morning Star*, at p. 327.) Thus, each year the list submitted by the Department has included the codes for all businesses, except for one type of business that section 25205.6 specifically exempts from the charge—nonprofit residential care facilities (§ 25205.6, subd. (h)). (*Morning Star*, at p. 327.) This means that virtually all businesses with 50 or more employees in this state must pay the hazardous materials charge. (*Morning Star*, at p. 328.)

Plaintiff The Morning Star Company (the Company) is a California corporation that offers labor services to companies involved in the tomato processing business. (*Morning Star, supra*, 38 Cal.4th at p. 328.) The Company believes that it should not have to pay the hazardous materials charge. (*Ibid.*) The Company acknowledges that it uses computers, printers, fluorescent lights, and other items that the Department classifies as (or regards as containing) "hazardous materials." (*Ibid.*) But the Company asserts that the Legislature did not consider companies in its position as " 'us[ing], generat[ing], stor[ing], or conduct[ing] activities . . . related to hazardous materials,' " and that the Department, therefore, has promulgated overly expansive lists of codes in the Regulation. (38 Cal.4th at p. 328.)

Consistent with this position, the Company paid its section 25205.6 charges for the years 1993 through 1996 and 2003 through 2005 under protest, and sought refunds from the Board. (*Morning Star, supra*, 38 Cal.4th at p. 328.) The Company instituted this action when the Board rejected its demand. The Company seeks a refund, an injunction preventing collection of the charge, a declaration that the Regulation conflicts with section 25205.6, and a declaration that section 25205.6 is a regulatory fee that violates equal protection and substantive due process. (See *Morning Star*, at p. 328.)

In a bench trial, the trial court rejected the Company's position and denied it relief. So do we.

## DISCUSSION

### I. The Regulation Is Consistent and Not in Conflict with Section 25205.6

#### A. *Legal Background*

"Government Code section 11342.2 provides the general standard of review for determining the validity of administrative regulations. That section

states that '[w]henever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless [1] consistent and not in conflict with the statute and [2] reasonably necessary to effectuate the purpose of the statute.'

"Under the first prong of this standard, the judiciary independently reviews the administrative regulation for consistency with controlling law. The question is whether the regulation alters or amends the governing statute or case law, or enlarges or impairs its scope. In short, the question is whether the regulation is within the scope of the authority conferred; if it is not, it is void. This is a question particularly suited for the judiciary as the final arbiter of the law, and does not invade the technical expertise of the agency.

"By contrast, the second prong of this standard, reasonable necessity, generally does implicate the agency's expertise; therefore, it receives a much more deferential standard of review. The question is whether the agency's action was arbitrary, capricious, or without reasonable or rational basis." (*Communities for a Better Environment v. California Resources Agency* (2002) 103 Cal.App.4th 98, 108–109 [126 Cal.Rptr.2d 441], fns. omitted; see *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11 & fn. 4 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) A regulation which interprets a statute may be declared invalid if the agency's determination that the regulation is reasonably necessary to effectuate the statutory purpose is not supported by substantial evidence. (Gov. Code, § 11350, subd. (b)(1).)

The Regulation interprets section 25205.6, which currently provides in pertinent part:

"(a) For purposes of this section, 'organization' means a corporation, limited liability company, limited partnership, limited liability partnership, general partnership, and sole proprietorship.

"(b) On or before November 1 of each year, the [D]epartment shall provide the [B]oard with a schedule of codes, that consists of the types of organizations that use, generate, store, or conduct activities in this state related to hazardous materials, as defined in Section 25501, including, but not limited to, hazardous waste. The schedule shall consist of identification codes from one of the following classification systems, as deemed suitable by the [D]epartment:

"(1) The Standard Industrial Classification (SIC) system established by the United States Department of Commerce.

"(2) The North American Industry Classification System (NAICS) adopted by the United States Census Bureau.

"(c) Each organization of a type identified in the schedule adopted pursuant to subdivision [(b)] shall pay an annual fee, which shall be set in the following amounts: [¶] . . . [¶] [ranging, for example, from $200 for business organizations with 50 to 74 employees, to $1,500 for 250 to 499 employees, up to $9,500 if there are at least 1,000 employees].

"(d) The fee imposed pursuant to this section shall be paid by each organization . . . in accordance with . . . the Revenue and Taxation Code and shall be deposited in the Toxic Substances Control Account. The revenues shall be available, upon appropriation by the Legislature, for the purposes specified in subdivision (b) of Section 25173.6 [primarily, for hazardous material remediation, cleanup and disposal, including California's share of the cost of the federal Superfund program]."

■ As quoted above, section 25205.6, subdivision (b) "expressly incorporates the definition of 'hazardous material' [set forth] in section 25501. Section 25501, [former] subdivision (o) [(now (p))] states, ' "Hazardous material" means any material that, because of its quantity, concentration, or physical or chemical characteristics, poses a significant present or potential hazard to human health and safety or to the environment if released into the workplace or the environment. "Hazardous materials" include, but are not limited to, hazardous substances, hazardous waste, and any material that a handler or the administering agency has a reasonable basis for believing that it would be injurious to the health and safety of persons or harmful to the environment if released into the workplace or the environment.' The terms 'hazardous substance' and 'hazardous waste,' both subsumed within the definition of 'hazardous materials,' are themselves also defined within section 25501 (see § 25501, subds. (p), (q)); these definitions incorporate numerous schedules and descriptions of substances and items deemed hazardous in particular contexts or concentrations under state law, federal law, or both (*ibid.*). Several of these schedules and definitions, in turn, refer to other schedules and definitions found elsewhere in the law, and so forth." (*Morning Star, supra*, 38 Cal.4th at p. 337, fn. 5.)

The Regulation in pertinent part "finds that every business in California with fifty or more employees [(except for nonprofit residential care facilities, exempted by § 25205.6, subd. (h))] uses, generates, stores, or conducts activities in this state related to hazardous materials, as defined in section 25501 of the Health and Safety Code and in this section." (Cal. Code Regs., tit. 22, § 66269.1.)

### B. The First Prong for Regulation Validity Under Government Code Section 11342.2

We begin with the first prong for regulation validity under Government Code section 11342.2: To be valid, the Regulation must be "consistent and not in conflict with" (Gov. Code, § 11342.2) Health and Safety Code section 25205.6.

■ Section 25205.6 directs the Department to inform the Board annually, through a list of business classification codes referenced in the section, of the types of businesses that use, generate, store, or conduct activities in California related to "hazardous materials," as that term is defined in section 25501, subdivision (p). (§ 25205.6, subd. (b).) In the Regulation, the Department has provided the Board with all of the business classification codes referred to in section 25205.6 (except for nonprofit residential care facilities) based on the Department's view that all modern businesses with at least 50 employees use, generate, store, or conduct activities related to common products that contain hazardous material, such as copy machines, fax machines, printers, computers, fluorescent lights, batteries, and cell phones. In this most basic sense, then, the Regulation is "consistent and not in conflict with" section 25205.6: The Regulation carries out the task the statute directed it to do.

The Company argues that had this all-inclusive view been what the Legislature intended section 25205.6 to mean, the Legislature, in the pithy words of *Morning Star*, would have "simply said so, and said so simply." (*Morning Star, supra*, 38 Cal.4th at p. 337.) Instead, the Legislature in section 25205.6 adopted a detailed, code-listing scheme based on the types of businesses that use, generate, store, or conduct activities related to "hazardous materials," with "hazardous materials" defined by reference to a further array of statutes and regulations. (*Morning Star*, at p. 337.)

This is a potent argument. But it is not the whole story. In examining the legislative intent of section 25205.6, we find the rest of the story.

In 1994, the Legislature amended section 25205.6 to exempt nonprofit residential care facilities from its reach. (§ 25205.6, subd. (h), formerly subd. (g), and before that, subd. (e); Stats. 1994, ch. 619, § 1, p. 3022.) In the course of adopting this amendment, the Legislature was informed in 1994: "In enacting the environmental fee [in section 25205.6] . . . the Legislature authorized an assessment on *all* corporations with more than 50 employees. The purpose was to generate funding for the activities of the [Department], broaden the base of fees which support hazardous waste control activities and call attention to the fact that virtually *all* corporations, in some way, contribute to the generation of hazardous materials and hazardous waste[,]

e.g., fluorescent lights contain mercury, solvents are used in everything from computers to the adhesives which hold down carpets, etc." (Sen. Com. on Appropriations, Rep. on Assem. Bill No. 3540 (1993–1994 Reg. Sess.) Aug. 15, 1994, p. 1, some italics omitted, first italics added.)

In fact, frequently, the Legislature has been told that section 25205.6 applied to all corporations (now businesses). (E.g., as cited in *Morning Star, supra*, 38 Cal.4th at p. 339 ["Sen. Com. on Environmental Quality, Analysis of Sen. Bill No. 660 (1997–1998 Reg. Sess.) Sept. 15, 1997, p. 3 [referring to the assessment as 'the broadbased fee levied on all corporations']"]; see also Sen. Com. on Environmental Quality, Analysis of Sen. Bill No. 660 (1997–1998 Reg. Sess.) as amended Sept. 10, 1997; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2240 (1997–1998 Reg. Sess.) as amended Apr. 13, 1998.)

And, from the time section 25205.6 was enacted in 1989, the Department has interpreted the statute in the all-inclusive way the Regulation does.

The point is, there is strong evidence the Legislature knows full well that the Department has long been interpreting section 25205.6 in the manner expressed in the Regulation, and the Legislature is fine with that interpretation. This is strong evidence that the Regulation is "consistent and not in conflict with" (Gov. Code, § 11342.2) Health and Safety Code section 25205.6.

Furthermore, the *Morning Star* court's phrasing that section 25205.6 "could have simply said so, and said so simply" had it intended to apply to all businesses, was made in a limited context. (*Morning Star, supra*, 38 Cal.4th at p. 327.) That context was *Morning Star*'s rejection of the Department's argument there that such an all-inclusive view of section 25205.6 was " 'the *only* legally tenable interpretation' " of section 25205.6, and therefore exempted from the APA's requirement of formal rulemaking. (*Morning Star*, at pp. 328, 336–337, italics added, quoting Gov. Code, § 11340.9, subd. (f) [setting forth this exemption].) Significantly, *Morning Star* added, in this context, that the Department's all-inclusive view of section 25205.6 was "*reasonable*, but not plainly ineluctable." (*Morning Star*, at p. 328, italics added.)

The Company, however, points to the definition of "hazardous materials" set forth in section 25501, subdivision (p), which section 25205.6 incorporates at subdivision (b). In pertinent part, "hazardous material" is defined in section 25501 as "material that, because of its quantity, concentration, or physical or chemical characteristics, poses a *significant* present or potential hazard to human health and safety or to the environment if released into the

workplace or the environment." (§ 25501, subd. (p), italics added.) The Company argues that the Regulation ignores this statutory standard of "significan[ce]" by applying section 25205.6 to virtually all businesses; therefore, the Regulation is inconsistent with section 25205.6. We disagree.

As the trial court found, the Department's view that all modern businesses, in some way, use, generate, store, or conduct activities related to hazardous materials is supported by substantial evidence in the rulemaking record for the Regulation. That record disclosed that products used by virtually all California businesses in their normal operations—e.g., batteries, computers, personal data assistants, cell phones, copy machines, fax machines, toner cartridges, and fluorescent lights—contain materials which have been identified as hazardous within the meaning of section 25501. In short, the Regulation simply recognizes that virtually all modern businesses are surrounded by modern business equipment containing hazardous material. Given this hazardous material ubiquity in the modern economy, the Regulation is "consistent and not in conflict with" section 25205.6's standard of hazardous material *significance* (incorporated from § 25501, subd. (p)), because the statute applies only to relatively large businesses—those with *at least 50 employees*.

In a related argument, the Company argues that, because section 25205.6's standard of hazardous material significance (incorporated from § 25501, subd. (p)) defines "hazardous material" as one "pos[ing] a significant present or potential hazard to human health and safety or to the environment," scientific peer review under section 57004 is required to determine whether *the Company's* use of its batteries, fluorescent lights, copy machines, computers and toners, for example, poses a "significant present or potential hazard." In other words, the Company argues, section 25501, subdivision (p) calls for science, and thus scientific peer review, as opposed to the Department's merely assuming that any business which has fluorescent lights, computers, copy machines, etc., must pay the fee. Section 57004 requires scientific peer review of the scientific basis for a proposed administrative regulation establishing a regulatory level or standard for the protection of public health or the environment. (§ 57004, subds. (a)(2), (b).)

■ This argument stumbles in two respects, however. First, section 25501, subdivision (p) and the Regulation incorporate already established hazardous material regulatory levels and standards from federal and state law. (§ 25501, subds. (p), (q), (r); Cal. Code Regs., tit. 22, § 66269.1, subds. (a), (b); see *Morning Star, supra*, 38 Cal.4th at p. 337, fn. 5.) Second, section 25205.6 applies to "*types* of [business] organizations" (and the Company is of the regulated "type"), rather than to *individual* businesses (such as the Company individually, independent of its type). (§ 25205.6, subd. (b), italics added.)

We conclude the Regulation is "consistent and not in conflict with" (Gov. Code, § 11342.2) Health and Safety Code section 25205.6.

### C. The Second Prong for Regulation Validity Under Government Code Section 11342.2

That leads us to the second prong for regulation validity under Government Code section 11342.2: Is the Regulation reasonably necessary to effectuate the purpose of section 25205.6?

■ In light of what we have just said, the Regulation is not arbitrary, capricious or without reasonable or rational basis. (*Communities for a Better Environment v. California Resources Agency, supra*, 103 Cal.App.4th at p. 109.) As we have seen, the Department's determination that the Regulation is reasonably necessary to effectuate the purpose of Health and Safety Code section 25205.6 is supported by substantial evidence. (Gov. Code, § 11350, subd. (b)(1).)

We conclude the Regulation is "reasonably necessary to effectuate the purpose of" (Gov. Code, § 11350, subd. (b)(1)) Health and Safety Code section 25205.6.

### II. Section 25205.6 Imposes a Tax Rather Than a Regulatory Fee

The Company contends that section 25205.6 imposes a regulatory fee rather than a tax. Based on this premise, the Company argues (as we shall see in pt. III. of this opinion, *post*) that this fee violates equal protection and substantive due process because it is not reasonably related to the regulatory purposes of section 25205.6. We conclude section 25205.6 imposes a tax rather than a regulatory fee.[5]

■ " '[T]he distinction between taxes and fees is frequently "blurred," taking on different meanings in different contexts. [Citations.]' [Citation.] Ordinarily taxes are imposed for revenue purposes and not[,] [like regulatory fees,] 'in return for a specific benefit conferred or privilege granted.' " (*California Farm Bureau, supra*, 51 Cal.4th at p. 437, quoting *Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866, 874 [64 Cal.Rptr.2d 447, 937 P.2d 1350] (*Sinclair Paint*).)

"[A] fee may be charged by a government entity so long as it does not exceed the reasonable cost of providing services necessary to regulate the

---

[5] There is no dispute that section 25205.6 was passed by a two-thirds vote of the Legislature, as required for taxes. (See Cal. Const., art. XIII A.)

activity for which the fee is charged. A valid fee may not be imposed for unrelated revenue purposes." (*California Farm Bureau, supra*, 51 Cal.4th at p. 438, citing *Sinclair Paint, supra*, 15 Cal.4th at p. 876.)

■ "The scope of a regulatory fee is somewhat flexible and is related to the overall purposes of the regulatory governmental action. ' "A regulatory fee may be imposed under the police power when the fee constitutes an amount necessary to carry out the purposes and provisions of the regulation." [Citation.] "Such costs . . . include all those incident to the issuance of the license or permit, investigation, inspection, administration, maintenance of a system of supervision and enforcement." ' " (*California Farm Bureau, supra*, 51 Cal.4th at p. 438, quoting *California Assn. of Prof. Scientists v. Department of Fish & Game* (2000) 79 Cal.App.4th 935, 945 [94 Cal.Rptr.2d 535].)

"[P]ermissible fees must be related to the overall cost of the governmental regulation. They need not be finely calibrated to the precise benefit each individual fee payor might derive. What a fee cannot do is exceed the reasonable cost of regulation with the generated surplus used for general revenue collection. An excessive fee that is used to generate general revenue becomes a tax." (*California Farm Bureau, supra*, 51 Cal.4th at p. 438.)

Just as "[r]eference to the statutory language" at issue in *California Farm Bureau*—Water Code section 1525—effectively "reveal[ed] a specific intention to" impose a regulatory fee, reference to the statutory language at issue here—Health and Safety Code section 25205.6—reveals a specific intention to impose a tax. (*California Farm Bureau, supra*, 51 Cal.4th at pp. 438–439.)

We will let the most relevant parts of these two statutes speak for themselves on the issue of regulatory fee versus tax.

Water Code section 1525 imposes governmental charges for appropriating water, leasing water, or discharging water. In relevant part, section 1525 provides:

"(a) Each person or entity who holds a permit or license to appropriate water, and each lessor of water leased . . . shall pay an annual fee according to a fee schedule established by the [State Water Resources Control Board (hereafter, the Water Board)].

"(b) [(Subd. (b) deals with, among other things, discharging water.)] [¶] . . . [¶]

"(c) The [Water Board] shall set the fee schedule authorized by this section so that the total amount of fees collected pursuant to this section equals that

amount necessary to recover costs incurred in connection with the issuance, administration, review, monitoring, and enforcement of permits, licenses, certificates, and registrations to appropriate water, water leases, and orders approving changes in point of discharge, place of use, or purpose of use of treated wastewater. The [Water Board] may include, as recoverable costs, but is not limited to including, the costs incurred in reviewing applications, registrations, petitions and requests, prescribing terms of permits, licenses, registrations, and change orders, enforcing and evaluating compliance with permits, licenses, certificates, registrations, change orders, and water leases, inspection, monitoring, planning, modeling, reviewing documents prepared for the purpose of regulating the diversion and use of water, applying and enforcing the prohibition set forth in [Water Code] Section 1052 against the unauthorized diversion or use of water . . . , and the administrative costs incurred in connection with carrying out these actions."

With respect to Water Code section 1525, *California Farm Bureau* observed, "By its terms, section 1525 permits the imposition of fees only for the costs of the functions or activities described, and not for general revenue purposes. Section 1525, subdivision (c) carefully sets out that the fees imposed shall relate to costs linked to issuing, monitoring, enforcing and administering licenses and permits, and lists the recoverable costs in some detail." (*California Farm Bureau, supra*, 51 Cal.4th at pp. 438–439.)

Section 25205.6, of course, imposes the charge at issue here, and provides, in pertinent part (through its incorporation of § 25173.6):

"(b) . . . [T]he [D]epartment shall provide . . . a schedule . . . that consists of the types of [business] organizations that use, generate, store, or conduct activities in this state related to hazardous materials . . . : [¶] . . . [¶]

"(c) Each organization of a type identified in the schedule . . . shall pay an annual fee . . . set in the following amounts: [¶] . . . [¶]

"(d) The fee imposed pursuant to this section shall be paid by each organization that is identified in the schedule . . . and shall be deposited in the Toxic Substances Control Account [(which is in the General Fund—§ 25173.6, subd. (a))]. The revenues shall be available, upon appropriation by the Legislature, for the purposes specified in subdivision (b) of Section 25173.6."

Section 25173.6, subdivision (b) specifies:

"(b) The funds deposited in the Toxic Substances Control Account may be appropriated . . . for the following purposes:

"(1) The administration and implementation of the following:

"(A) Chapter 6.8 (commencing with Section 25300) . . . [(response program for hazardous substance release)].

"(B) Chapter 6.85 (commencing with Section 25396) [(expedited remedial action)].

"(C) Article 10 (commencing with Section 7710) . . . of the Public Utilities Code [(hazardous railroad lines for substance transport)].

"(D) Activities of the [D]epartment related to pollution prevention and technology development . . . .

"(2) The administration of the following units . . . within the [D]epartment, and the implementation of programs administered by those units . . . :

"(A) The Human and Ecological Risk Division.

"(B) The Environmental Chemistry Laboratory.

"(C) The Office of Pollution Prevention and Technology Development.

"(3) For allocation to the Office of Environmental Health Hazard Assessment . . . to assist the [D]epartment as needed in administering the programs described in subparagraphs (A) and (B) of paragraph (1).

"(4) For allocation to the State Board of Equalization to pay refunds of fees collected pursuant to Section 43054 of the Revenue and Taxation Code.

"(5) For the state share mandated pursuant to paragraph (3) of subsection (c) of Section 104 of the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. Sec. 9604(c)(3)) [(federal Superfund program)].

"(6) For the purchase by the state, or by a local agency with the prior approval of the [state], of hazardous substance response equipment and other preparations for response to a release of hazardous substances. . . .

"(7) For payment of all costs of removal and remedial action incurred by the state, or by a local agency with the approval of the [state], in response to a release or threatened release of a hazardous substance, to the extent the

costs are not reimbursed by the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. Sec. 9601 et seq.).

"(8) For payment of all costs of actions taken pursuant to subdivision (b) of Section 25358.3 [(imminent danger of hazardous release)], to the extent that these costs are not paid by the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. Sec. 9601 et seq.).

"(9) For all costs incurred by the [D]epartment in cooperation with the Agency for Toxic Substances and Disease Registry established pursuant to subsection (i) of Section 104 of the federal Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. Sec. 9604(i)) and all costs of health effects studies undertaken regarding specific sites or specific substances at specific sites. . . .

"(10) For repayment of the principal of, and interest on, bonds sold pursuant to Article 7.5 (commencing with Section 25385) . . . [(Johnston-Filante Hazardous Substance Cleanup Bond Act of 1984)].

"(11) For the reasonable and necessary administrative costs and expenses of the Hazardous Substance Cleanup Arbitration Panel created pursuant to Section 25356.2.

"(12) Direct site remediation costs.

"(13) For the [D]epartment's expenses for staff to perform oversight of investigations, characterizations, removals, remediations, or long-term operation and maintenance.

"(14) For the administration and collection of the fees imposed pursuant to Section 25205.6.

"(15) For allocation to the office of the Attorney General . . . for the support of the Toxic Substance Enforcement Program in the office of the Attorney General, in carrying out the purposes of Chapter 6.8 (commencing with Section 25300) [(response program for hazardous substance release)] and Chapter 6.85 (commencing with Section 25396) [(expedited remedial action)].

"(16) For funding the California Environmental Contaminant Biomonitoring Program established pursuant to Chapter 8 (commencing with Section 105440) . . . .

"(17) As provided in Sections 25214.3 and 25215.7 and, with regard to penalties recovered pursuant to Section 25214.22.1, to implement and enforce Article 10.4 (commencing with Section 25214.11) [(Toxics in Packaging Prevention Act)]."

As just quoted, there is a stark contrast between the terms of Water Code section 1525, effectively found to be a regulatory fee by the *California Farm Bureau* court, and the terms of Health and Safety Code section 25205.6 (incorporating Health & Saf. Code, § 25173.6, subd. (b)).

By its terms, the section 25205.6 charge, through its incorporation of section 25173.6, subdivision (b), seeks to raise revenue to pay for a wide range of governmental services and programs related to hazardous waste control that are unrelated to the activity for which the section 25205.6 charge is made. More pointedly, the section 25205.6 charge, through its incorporation of section 25173.6, subdivision (b), pays for the remediation, cleanup, disposal and control of hazardous materials generally, rather than for the regulation of the section 25205.6 payers' business activities in using, generating or storing hazardous materials.

Thus, the section 25205.6 charge to the Company is not regulatory because it does not seek to regulate the Company's use, generation or storage of hazardous material but to raise money for the control of hazardous material generally. The charge is therefore a tax. At its most basic level, the section 25205.6 charge is not a regulatory fee because it is not regulatory. It is monetary.

We conclude section 25205.6 imposes a tax rather than a regulatory fee.

### III. The Section 25205.6 Tax Does Not Violate Equal Protection or Substantive Due Process

The Company claims the section 25205.6 charge violates equal protection and substantive due process. Having determined that section 25205.6 imposes a tax, we reject these claims under the deferential standard of review used to assess the constitutionality of a tax.

The Company argues that the section 25205.6 charge irrationally singled out corporations (prior to being amended in 2006, when § 25205.6 was made applicable to essentially all business organizations with at least 50 employees), and irrationally bases the amount of its graduated assessment solely on the number of employees. The Company asserts that imposing the tax only on corporations or on businesses employing 50 or more persons bears no rational relationship to the goal of placing the costs of disposal on those who create the problem. We disagree.

■ " 'It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. [Citations.] . . . [I]nequalities which result from a singling out of one particular class for taxation or exemption infringe no constitutional limitation.' " (*Stevens v. Watson* (1971) 16 Cal.App.3d 629, 633 [94 Cal.Rptr. 190], quoting *Carmichael v. Southern Coal Co.* (1937) 301 U.S. 495, 509–510 [81 L.Ed. 1245, 1253, 57 S.Ct. 868].)

■ The rational basis test is used for both equal protection analysis involving economic legislation (*Swoap v. Superior Court* (1973) 10 Cal.3d 490, 504 [111 Cal.Rptr. 136, 516 P.2d 840]; *County of Los Angeles v. Patrick* (1992) 11 Cal.App.4th 1246, 1252 [14 Cal.Rptr.2d 665]) and substantive due process analysis (*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 863, fn. 3 [50 Cal.Rptr.2d 242, 911 P.2d 429]; *City of San Jose v. Donohue* (1975) 51 Cal.App.3d 40, 45 [123 Cal.Rptr. 804]). We therefore treat the two claims as one. (See *Cohan v. Alvord* (1984) 162 Cal.App.3d 176, 186 [208 Cal.Rptr. 421]; see also *Minnesota v. Clover Leaf Creamery Co.* (1981) 449 U.S. 456, 470, fn. 12 [66 L.Ed.2d 659, 673, 101 S.Ct. 715].)

■ The legislative choices over the methods to implement its programs are not as limited as the Company argues. The Legislature is given broad power to determine the best methods to carry out its programs. The Legislature need only make statutory classifications that are rationally related to a reasonably conceivable legislative purpose. (*Warden v. State Bar* (1999) 21 Cal.4th 628, 644–651 [88 Cal.Rptr.2d 283, 982 P.2d 154].)

■ The purpose of section 25205.6 is to raise revenue to fund the state's hazardous material and hazardous waste programs. The taxing of businesses with 50 or more employees, as a general measure of the size of the business and its use of hazardous material, is manifestly rationally related to that of funding the disposal of hazardous material. Furthermore, as for the pre-2006 amended version of section 25205.6 that applied to corporations only, a legislative decision to tax corporations and not other businesses (via the individuals who comprise them) is generally permissible under the equal protection clause, given the advantages that corporations enjoy in carrying on their businesses. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973) 410 U.S. 356, 359–362, 365 [35 L.Ed.2d 351, 354–356, 358, 93 S.Ct. 1001].)

To impose on the state the task and costs of relating the disposal charge to each business by the amount of hazardous material used would eviscerate the program. As with other taxes, the Legislature need only generally relate the subject of the hazardous material tax with the purpose to be served. It has done so in this case.

## DISPOSITION

The judgment is affirmed. Each party shall pay its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Blease, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 21, 2012, S199417.