Filed 6/29/26

<u>CERTIFIED FOR PUBLICATION</u>


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)


| | |
|---|---|
| DAVID GARST, as Trustee, etc.,<br>        Plaintiff and Respondent,<br><br>        v.<br><br>TEHAMA COUNTY FLOOD CONTROL AND<br>WATER CONSERVATION DISTRICT,<br>        Defendant and Appellant. | C103356<br><br>(Super. Ct. No. 23CI000079) |


APPEAL from a judgment of the Superior Court of Tehama County, Bradley L. Boeckman, Judge. Affirmed as modified.

Margaret E. Long, County Counsel, Daniel B. Klausner, Deputy County Counsel (Tehama); Colantuono, Highsmith & Whatley, Michael G. Colantuono and Matthew W. McAleer for Defendant and Appellant.

Swanson Law Office, Mark D. Norcross, Jeffery J. Swanson and Adam M. Pressman for Plaintiff and Respondent.

Best Best & Krieger and Lutfi Kharuf for League of California Cities, California State Association of Counties, and California Special Districts Association as Amici Curiae.


This appeal concerns the validity of a groundwater well registration charge (well registration charge) adopted by the Tehama County Flood Control and Water Conservation District (District) and imposed on every parcel of land in the County of Tehama (County) regardless of whether the property uses groundwater or has a

1

groundwater well.[1]  The trial court granted David Garst's petition for writ of mandate, finding the well registration charge was an unlawful tax and mandating the District to, among other things, refund all collected charges to the taxpayers in the County.  The District appeals.

The District[2] asserts the well registration charge is a valid regulatory fee (and thus not a tax) under California Constitution[3] article XIII C, section 1, subdivision (e)(3) (article XIII C, section 1(e)(3)).  It further raises a myriad of affirmative defenses, the majority of which are premised on the District's assertion that it adopted the well registration charge under Water Code[4] section 10730, subdivision (a) (section 10730(a)) within the Sustainable Groundwater Management Act (§ 10720 et seq.) (the Act).  In the alternative, the District argues refunds are procedurally and substantively barred and are not required as a matter of due process.

We initially reject the District's affirmative defenses against Garst's claims, concluding, in part, the District failed to show that the well registration charge comports with section 10730(a).  Next, assuming but not deciding that the District appropriately

---

[1]  As explained *post*, the District's Resolution No. 9-2022 imposed the well registration charge on every parcel of land in the County.  The parties agree, however, that the District at some point decided to collect the charge only on parcels that are larger than five acres.  The parties do not refer us to anything in the record showing the District took that action.  Because the purported modification as to the District's collection of the well registration charge is largely immaterial to the arguments presented on appeal and given the record before us, we analyze the arguments based on the District's resolution imposing the well registration charge on all parcels within the County.

[2]  The League of California Cities, California State Association of Counties, and California Special Districts Association (collectively amici) filed an amici curiae brief in support of the District's appeal.

[3]  Undesignated article references are to the California Constitution.

[4]  Undesignated section references are to the Water Code.

2

adopted the well registration charge under alternate delegated authority, we consider the constitutionality of the charge. In that regard, we decline to address the parties' dispute as to whether the analytical framework in article XIII C, as amended by Proposition 26, or article XIII D, added by Proposition 218, applies because resolution of the question is immaterial to the disposition of this appeal. The parties agree that the well registration charge does not fall within the property-related service fee exception in article XIII D, section 3, subdivision (a)(4), and we conclude the District has failed to show that the well registration charge is a regulatory fee within the meaning of article XIII C, section 1(e)(3). As such, we conclude the charge constitutes an unconstitutional tax. We, however, modify the judgment to strike the provision mandating the District to refund the well registration charge because Garst did not comply with the Government Claims Act (Gov. Code, § 810 et seq.).

## BACKGROUND

### I

### *The Act*

The Legislature adopted the Act to regulate "California's groundwater by identifying its most impacted basins, mandating local agencies govern those basins, requiring those agencies to submit sustainable use plans for state approval, and allowing for state intervention if needed." (*State Water Resources Control Bd. v. Superior Court* (2025) 115 Cal.App.5th 734, 750.) The goals of the Act are, among other things, to "establish[] minimum standards for sustainable groundwater management, giv[e] local groundwater authorities the power and support to sustainably manage groundwater, and creat[e] a more efficient and cost-effective groundwater adjudication process that protects water rights, ensures due process, and prevents unnecessary delay." (*Mojave Pistachios, LLC v. Superior Court* (2024) 99 Cal.App.5th 605, 616 (*Mojave Pistachios*), citing § 10720.1.)

3

To meet these goals, the Legislature authorized the creation of groundwater sustainability agencies to develop and create groundwater sustainability plans (§§ 10723-10724), and granted those agencies several powers, including the power to "require registration of a groundwater extraction facility within the management area of the groundwater sustainability agency" (§ 10725.6). A "[g]roundwater extraction facility" is "a device or method for extracting groundwater from within a basin." (§ 10721, subd. (h).)

II

*The District as a Groundwater Sustainability Agency*

A substantial portion of land within the County overlays 11 groundwater subbasins. In 2015, the District became the groundwater sustainability agency for those subbasins. The District thereafter entered into a memorandum of understanding with the County in which the District assumed the responsibility to "perform all groundwater monitoring, regulation setting, and groundwater extraction registration programs" and "pay all costs and recover such costs for its monitoring, regulating, and registration activities." The District agreed to "either perform or contract for the performance of all groundwater extraction facility registration and groundwater monitoring activities as required under any applicable groundwater sustainability management program."

III

*The District's Resolutions and the Litigation*

In June 2022, the District adopted Resolution No. 9-2022. The resolution states section 10725.6 permits groundwater sustainability agencies to require registration of groundwater extraction facilities within their management areas and the District will incur actual and reasonable costs to receive and process such registrations. The resolution further states section 10730(a) "provides that a groundwater sustainability agency may impose fees for regulated activities to fund the cost of the groundwater sustainability program including but not limited to 'investigations, inspections,

4

compliance assistance, enforcement, and program administration.' " The District resolved that it required groundwater extraction facilities in the County to be registered and imposed an annual charge of $0.29 per acre on each legal parcel of land within the County for three years to pay the administrative costs of a well registration program. The charge would be added to the tax rolls and collected like ordinary ad valorem taxes.

The District found the amounts of the well registration charge to be "reasonably necessary to recover the costs of providing the services described [in the resolution], and that the costs imposed by such [charges were] fairly apportioned so that charges allocated to any payor w[ould] bear a fair and reasonable relationship to the payor's burdens on or benefits from the services performed by the [District]." The District further found that the well registration charge was being imposed "for a specific government service provided directly to the payor that [wa]s not provided to those not charged, and d[id] not exceed the reasonable costs to the County of providing the service."[5]

Garst sued the District on April 3, 2023, for declaratory relief and a writ of mandate and, in the alternative, a writ of administrative mandate (complaint). Garst alleged, among other things, that the District violated Propositions 218 and 26 in adopting the well registration charge. In his prayer for relief, Garst requested, among other things, a peremptory writ of mandate or, in the alternative, administrative mandate directing the District to set aside, vacate, or rescind the well registration charge; refund Garst for any payment of the charge; and refrain from charging Garst a well registration charge absent the District complying with its legal obligations. Garst also requested a judicial declaration of the foregoing.

---

[5] This language tracks the exception in article XIII C, section 1, subdivision (e)(2). The District does not argue that the exception in article XIII C, section 1, subdivision (e)(2) applies to the well registration charge. It argues the regulatory fee exception in article XIII C, section 1(e)(3) applies instead.

In June 2023, the District adopted Resolution No. 3-2023. The resolution states that Resolution No. 9-2022 initiated the District's well registration program (program) and imposed a charge on property owners to pay the costs of that program. The resolution identified two goals of the program as: (1) "to develop information necessary to calculate a groundwater fee to support the program of monitoring the groundwater throughout Tehama County" and (2) "to develop information necessary to ensure groundwater sustainability and quality throughout Tehama County." The resolution further states that compliance with the program "will help to support the fairness and equity of any groundwater fee ultimately imposed by the District" and "help to ensure programs for protecting the water supply and quality of the aquifers throughout Tehama County." The resolution sets forth the minimum requirements for a property to be deemed in compliance with the program and the District's finding that the elimination of the fee in years subsequent to a compliance determination may encourage greater cooperation and serve "a greater public purpose than is served by collecting the fee."

In Resolution No. 3-2023, the District resolved that its board would receive a list of parcels meeting the compliance criteria outlined in the resolution by May 31 of a given year and would determine whether to waive the subsequent well registration charges for those parcels. The resolution also provides a process for a property owner to request a waiver when the owner's property is not included on the compliance list submitted to the board.

In July 2023, the District adopted Resolution No. 4-2023. Therein, the District stated that its board had received two lists of parcels—one identifying parcels meeting the compliance requirements for a waiver as outlined in Resolution No. 3-2023 and another identifying parcels for which the well registration charge would be added to the tax rolls. The District made various findings and resolved that it waived the well registration charge for those parcels identified on the compliance list and adopted the well registration charge for the parcels identified on the noncompliant list. The District

6

waived the well registration charge for Garst's parcels for the second and third years of the program.

In 2024, Garst filed his opening brief in the trial court, arguing Resolution No. 9-2022 did not comply with section 10730 and was invalid under the California Constitution. Garst filed a declaration in support of his brief stating that he and his wife are trustees of a trust owning 40 parcels within the County. All of the parcels are subject to a recorded conservation easement. Garst has three groundwater wells on two parcels that are used for domestic and residential irrigation purposes; he does not have groundwater wells on any other parcels.[6] In November 2022, Garst received tax bills for all of the parcels for the fiscal year running from July 1, 2022, through June 30, 2023. After paying the tax bills out of the trust's account, Garst noticed that the taxes for the properties had increased by approximately $4,000, which he then learned was for a well registration program.

In its opposition to Garst's brief, the District argued, among other things, Garst's challenge was barred because: (1) he failed to "pay first, litigate later"; (2) he failed to comply with the Government Claims Act; (3) he did not exhaust his administrative remedies under section 10726.6, subdivision (d) (section 10726.6(d)); and (4) he did not

---

[6] Several of the District's statements regarding Garst's purported water use are not supported by the record. First, the District states Garst "admits his own water use is significant" based on his declaration and the conservation easement attached to his declaration. There is no such statement in Garst's declaration and merely because the conservation easement *permits* Garst to use his property in certain ways does not mean he *does* use the property for such purposes. Second, the District asserts that Garst's "cattle operation excludes him from" being a de minimis groundwater extractor (i.e., a person who extracts two acre-feet or less of groundwater per year for domestic use), without any citation to the record. Nothing in Garst's declaration indicates that he runs a cattle operation. Finally, the District asserts, citing Garst's declaration, that Garst uses groundwater for livestock. Again, nothing in Garst's declaration supports that assertion. Garst declared he uses the groundwater wells for "residential use and residential irrigation."

file the action within the 180-day statute of limitations provided in section 10726.6, subdivision (c) (section 10726.6(c)). The District further argued the well registration charge was a valid regulatory fee because both section 10730(a) and article XIII C, section 1(e)(3) allow the imposition of fees for investigations, and the District otherwise complied with Proposition 26's requirements. The District filed two consultant declarations in support of its opposition.[7]

Greg Clumpner, a consultant to public agencies for the purpose of ratemaking, declared that, in his opinion, the District's estimated budget of $360,000 per year was reasonable and the well registration charge was "generally justifiable given the District was using the best available data at the time." He further declared it was reasonable to use the well registration charge as "a downpayment" to be credited against a later "updated fee" that would provide "a more nuanced allocation of costs" and a more equitable allocation of the burden of the program based on the data to be obtained.

The second declaration was submitted by Eddy Teasdale, a hydrologist, who declared, among other things, parcels without groundwater wells receive a benefit from a countywide sustainability groundwater program due to the hydrological connection between surface water and groundwater and countywide water resource management is crucial to ensuring sustainable water resources are available.

In the bench trial, the trial court ruled against the District on its affirmative defenses and found: (1) the District acted in good faith in establishing the well registration charge; (2) the District imposed the well registration charge for a legitimate purpose; (3) the District can impose proper, valid regulatory fees regardless of whether a property overlays a subbasin; (4) the charge identified in Resolution No. 9-2022 was reasonable; (5) however small the charge, the well registration charge was not related to

---

[7] The District refers to its consultants as experts. The District does not, however, provide a record citation indicating the trial court designated its consultants as such.

8

the property; (6) the "burden created by the property on the government is not in any way related to a service provided by the government or a benefit provided by the government to the property owner"; and (7) the well registration charge imposed by Resolution No. 9-2022 was a tax.  The trial court issued a writ of mandate directing the District to rescind the tax imposed under Resolution No. 9-2022, refund all sums collected from taxpayers under that resolution, and to cease and desist any further tax collection efforts related to Resolution No. 9-2022.  The trial court further awarded Garst attorney fees and recoverable costs.  The District appeals.[8]

## DISCUSSION

We commence the analysis by addressing the District's affirmative defenses to Garst's claims and find none of them persuasive.  We next consider whether the well registration charge passes constitutional muster, concluding it does not.  Finally, we hold the trial court erred in mandating the District to refund the unconstitutional tax because Garst did not comply with the Government Claims Act.

## I

### *The District's Affirmative Defenses to Garst's Claims Lack Merit*

A.     *Further Legal Background*

As noted *ante*, groundwater sustainability agencies have the power, among others, to impose fees.  (§ 10730, subd. (a).)  The Legislature, however, placed a caveat on this financial authority—a groundwater sustainability agency "shall not impose" any such fee "on a de minimis extractor unless the agency has regulated the users pursuant to [the Act]."  (*Ibid*.)  A de minimis extractor "means a person who extracts, for domestic purposes, two acre-feet or less per year."  (§ 10721, subd. (e).)  Any fee adopted under

---

[8]  The District does not appeal the trial court's award of attorney fees and recoverable costs.

section 10730(a) may be collected in the same manner as ordinary municipal ad valorem taxes.  (§ 10730, subd. (d).)

A fee levied under section 10730 "shall be due and payable to the groundwater sustainability agency by each owner or operator on a day established by the groundwater sustainability agency."  (§ 10730.6, subd. (a).)  The term "[o]perator" is defined as "a person operating a groundwater extraction facility," and the term "[o]wner" is defined as "a person owning a groundwater extraction facility or an interest in a groundwater extraction facility other than a lien to secure the payment of a debt or other obligation." (§ 10721, subds. (o), (p).)

"If an owner or operator knowingly fails to pay a groundwater fee within 30 days of it becoming due" (§ 10730.6, subd. (b)), the owner or operator is liable for penalties and interest on the delinquent amount (*ibid.*), and the groundwater sustainability agency may sue the owner or operator to recover any delinquent fees, interest, or penalties (*id.*, subd. (c)) and may order the owner or operator to cease all groundwater extraction until the delinquent fees are paid (*id.*, subd. (e)).

A person may challenge a groundwater sustainability agency's resolution imposing a new fee or increasing an existing fee under section 10730(a) in court if the action is filed within 180 days following the adoption of the resolution.  (§ 10726.6, subd. (c).)  To do so, however, the person challenging the fee must pay it before bringing an action for a refund.  (*Mojave Pistachios*, *supra*, 99 Cal.App.5th at p. 631, citing § 10726.6, subd. (d).)  The person seeking a refund must further bring the action in accordance with "the manner provided for the payment of taxes under protest and actions for refund of that payment in Article 2 (commencing with Section 5140) of Chapter 5 of Part 9 of Division 1 of the Revenue and Taxation Code, as applicable."  (§ 10726.6, subd. (d).)

B.      *The Statute of Limitations Under Section 10726.6(c) Does Not Apply*

Section 10726.6(c) provides that "[a]ny judicial action or proceeding to attack, review, set aside, void, or annul the ordinance or resolution imposing a new, or increasing an existing, fee imposed pursuant to Section 10730 … shall be commenced within 180 days following the adoption of the ordinance or resolution."  The District argues Garst's challenge to the well registration charge is barred because the charge was adopted under section 10730(a) and Garst filed suit more than 180 days after the District adopted Resolution No. 9-2022.  Garst disagrees, asserting section 10726.6(c) is inapplicable because the charge was not imposed pursuant to section 10730.  Garst contends a charge under section 10730 can only be imposed for regulated activities and, here, the charge was imposed "on all parcel owners in the County 'regardless of use,' " including landowners who extract no groundwater or qualify as de minimis extractors.

We agree with Garst that the District failed to show it adopted the charge under section 10730(a), and thus section 10726.6(c) does not apply.

"An affirmative defense, the statute of limitations exists to promote the diligent assertion of claims, ensure defendants the opportunity to collect evidence while still fresh, and provide repose and protection from dilatory suits once excess time has passed. [Citations.]  The duration of the limitations period marks the legislatively selected point at which, for a given claim, these considerations surmount the otherwise compelling interest in adjudicating on their merits valid claims." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)  The defendant bears the initial burden of proving the plaintiff's claims are barred by the applicable statute of limitations. (*Id.* at p. 1197; Evid. Code, § 500 [defendants bear the burden of proving an affirmative defense].)  Thereafter, the burden shifts to the plaintiff to demonstrate the plaintiff's claims survive based on one or more nonstatutory exceptions to the basic limitations period, if applicable. (*Aryeh*, at p. 1197.)  "The application of the statute of limitations

11

on undisputed facts is a purely legal question [citation]; accordingly, we review the [trial court's] rulings de novo." (*Id*. at p. 1191.)

The District asserts the charge "is what it appears to be—an exercise of authority granted by [the Act] and therefore subject to [the Act's] statute of limitations" because the District "is the groundwater regulatory agency for the whole County" and it recited the language of section 10730(a) in Resolution No. 9-2022. But merely reciting the language of a statute and saying it applies does not make it so. After reading provisions of the Act together, the District exceeded the scope of its statutory authority under section 10730(a) by imposing the well registration charge on *all* landowners within the County.[9]

The words in statutes are to be construed in context and "statutes must be harmonized, both internally and with each other, to the extent possible." (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844.) Accordingly, statutes are construed together if they stand in pari materia. (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 124, fn. 4.) " 'Statutes are considered to be in pari materia when they relate to the same person or thing, to the same class of person[s] [or] things, or have the same purpose or object.' " (*Ibid*.) Here, harmonizing the statutes within chapter eight of the Act and reading them together, we conclude a groundwater fee adopted under section 10730(a) may only be imposed on owners or operators of groundwater extraction facilities.

---

[9] We reject the District's assertion in its reply brief that it imposed the well registration charge only on those landowners who "do or might use groundwater." (Boldface omitted.) The District provides no citation to the record for the statement. (*McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947 ["Statements of fact that are not supported by references to the record are disregarded by the reviewing court"].) We further find no basis in the District's consultant's report, cited by the District, for the apparent contention that the District considered existing and potential groundwater use when it imposed the well registration charge.

Section 10730(a), which authorizes the adoption of a groundwater fee, and section 10730.6, which addresses collection of a groundwater fee and remedies for nonpayment, relate to the same persons (i.e., fee payor) and thing (i.e., a groundwater fee), and have the same purpose or object (i.e., a groundwater sustainability agency's financial authority to fund the costs of a groundwater sustainability program). The statutes are located together in chapter eight of the Act. Although section 10730(a) is silent as to the identity of the fee payor (except to exempt a de minimis extractor not regulated under the Act), section 10730.6 is not. Section 10730.6 expressly states that the payor of a groundwater fee adopted under section 10730(a) is "each owner or operator." (§ 10730.6, subd. (a).) Thus, a groundwater fee adopted under section 10730(a) pertains to properties with groundwater extraction facilities, unless the de minimis extractor exemption applies.

Here, the District imposed the well registration charge on *all* landowners within the County regardless of whether a device or method for extracting groundwater from a basin exists on the respective parcels.[10] The District thus exceeded the scope of its delegated authority under section 10730(a) and its act of adopting the well registration charge pursuant to that statute is void. (*Benton v. Board of Supervisors* (1991) 226 Cal.App.3d 1467, 1480 ["[a]n administrative agency may not, under the guise of rulemaking, abridge or enlarge its authority or exceed the powers given to it by the statute—the source of its power"]; *Water Replenishment Dist. of Southern California v. City of Cerritos* (2012) 202 Cal.App.4th 1063, 1072 ["[a]n agency that exceeds the scope

---

[10] In light of this conclusion, we do not address the District's arguments that the well registration charge complied with the de minimis extractor limitation in section 10730(a). We note, however, the District cites no evidence for the assertion that the 5.02-acre minimum serves to exempt de minimis extractors from paying the charge (*Villacorta v. Cemex Cement, Inc.* (2013) 221 Cal.App.4th 1425, 1433 [argument of counsel is not evidence]), and its consultant wrote County personnel told him "[d]e minimis parcels (i.e., those less than 5.02 acres) were excluded because the costs of collecting these fees would outweigh the revenues."

of its statutory authority acts ultra vires and the act is void"]; *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 11 ["[a]dministrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations"].)  The statute of limitations under section 10726.6(c) accordingly does not apply.

The District urges section 10726.6(c) applies if we read section 10730(a) in congruence with:  (1) section 10725.2, subdivision (a), which provides "[a] groundwater sustainability agency may perform any act necessary or proper to carry out the purposes of this part"; and (2) section 10725.4, which vests the District with investigatory power "to prepare and adopt a groundwater sustainability plan" and "to propose and update fees."  But neither statute addresses the identity of the fee payors or contradicts the foregoing interpretation.

The cases upon which the District relies are also not persuasive.  We do not read the appellate court's statement in *Mojave Pistachios*, *supra*, 99 Cal.App.5th at page 632, footnote 20, that section 10726.6(c) "is the statute of limitations applicable to any action challenging a groundwater fee ordinance, including a fee refund action under section 10726.6(d)," to mean the statute of limitations applies "to **any** facial challenge to a groundwater fee," (boldface added) as the District asserts.  Nothing in that case relieves the District of the burden to prove the charge was adopted pursuant to section 10730(a). (§ 10726.6, subd. (c) [statute of limitations only applies to a "fee imposed pursuant to Section 10730, 10730.2, or 10730.4"].)

*Campana v. East Bay Municipal Utility Dist.* (2023) 92 Cal.App.5th 494 is likewise not helpful because it is distinguishable.  In that case, the plaintiffs sought to invalidate water rates under article XIII D, section 6, subdivision (b).  (*Campana*, at p. 499.)  The water district argued the 120-day limitations period under Public Utilities Code section 14402 barred the plaintiffs' claims; the appellate court agreed.  (*Campana*, at pp. 499-500, 507.)  There was no question as to whether the water rates were adopted

14

in compliance with the Public Utilities Code. The case is thus inapposite. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1081, fn. 3 [cases are not authority for propositions not considered]; cf. *KCSFV I, LLC v. Florin County Water Dist.* (2021) 64 Cal.App.5th 1015, 1031-1033 [statute of limitations under Gov. Code, § 66022, subd. (a) did not apply because water district failed to prove the rate increase constituted a service charge within the meaning of that statute].)

Finally, the District argues that, if it must prove the well registration charge was imposed under section 10730(a) to invoke the statute of limitations under section 10726.6(c), it would effectively require "the District to win on the merits before the statute of limitations applies." We disagree. The District merely needs to show that it adopted a groundwater fee in accordance with its delegated statutory authority and followed the prescribed procedures. (See *Padilla v. City of San Jose* (2022) 78 Cal.App.5th 1073, 1078-1079 [analyzing whether a charge was " 'fixed pursuant to' " Health & Saf. Code, div. 5, art. 4 to determine whether the mandatory prefiling procedure in Health & Saf. Code, § 5472 applied to bar the plaintiffs' claims]; *KCSFV I, LLC v. Florin County Water Dist.*, *supra*, 64 Cal.App.5th at pp. 1031-1033 [water district had to prove the rate increase constituted a service charge within the meaning of Gov. Code, § 66022 in order for the statute of limitations under subd. (a) of that statute to apply].) Such a requirement does not render the 180-day limitation meaningless or allow a petitioner to circumvent the statute of limitations simply by alleging a fee violates section 10730(a), as the District contends. The requirement merely places the burden of proof where it lies—with the defendant asserting an affirmative defense. A petitioner's allegation that a local government violated section 10730(a) does not allow a petitioner to circumvent section 10726.6(c), if it applies.

In sum, we conclude that, because the District's act of adopting the well registration charge under section 10730(a) exceeded the scope of its authority and is void, section 10726.6(c) does not apply. We nevertheless consider *post* whether the well

15

registration charge passes constitutional muster because the District argues, and Garst does not appear to dispute, that the District also had authority under its principal act[11] (i.e., the legislation under which the District was formed)[12] and the memorandum of understanding with the County to impose the well registration charge. We will assume without deciding that the District adopted the well registration charge under such delegated authority.

C.    *Garst Complied with the "Pay First, Litigate Later" Provision in Article XIII, Section 32 and Did Not Have to Exhaust Any Other Administrative Remedy*

The District argues Garst's suit is barred because: (1) he did not establish that, prior to filing litigation, he first paid the charge as required by article XIII, section 32, or paid the charge under protest as required by section 10726.6(d); and (2) he did not file an administrative claim as required by section 10726.6(d). We find no merit in these contentions.

As explained *ante*, the District failed to prove that the provisions of section 10726.6 apply because the District's act of adopting the well registration charge under section 10730(a) is void. Garst has further shown that he complied with the "pay first, litigate later" requirement under article XIII, section 32. (*State Water Resources Control Bd. v. Superior Court*, *supra*, 115 Cal.App.5th at pp. 773-774 [when a petitioner attacks a charge as an invalid tax, it triggers the protection of art. XIII, § 32].) That provision requires a taxpayer to pay the contested tax in full before initiating a suit. (*Water Replenishment Dist. of Southern California v. City of Cerritos* (2013) 220 Cal.App.4th 1450, 1465.)

---

[11] See Government Code section 56065.

[12] The District's principal act is located in Stats. 1957, ch. 1280, § 1, p. 2581 et seq. (See Deering's Ann. Wat.—Uncod. Acts (2025) Act 1360, § 1 et seq.)

Garst filed a declaration with supporting documentation showing he paid the well registration charge in the first year (which the District does not dispute). The District concedes that it waived the well registration charge for Garst in the second and third years of the program based on his compliance with certain requirements and has identified no well registration charge that remains outstanding and due for Garst to maintain his lawsuit. Accordingly, the District has not shown that Garst failed to comply with article XIII, section 32.

## II

### *The Well Registration Charge Is Unconstitutional*

The parties disagree as to whether the analytical framework of article XIII D (Proposition 218) or article XIII C (Proposition 26) governs to determine the validity of the well registration charge, assuming without deciding it was authorized under the District's principal act or the memorandum of understanding with the County. As we can best surmise, the District argues the well registration charge must be analyzed under the regulatory fee exception to a tax in article XIII C, section 1(e)(3) because it is not a fee or charge for property-related service subject to Proposition 218. Garst, in contrast, argues the well registration charge is unconstitutional under Proposition 218 because it was imposed "as an incident of property ownership," does not fall within the four exceptions identified in article XIII D, section 3, subdivision (a), and was not appropriately submitted to a vote, as required in article XIII D, section 6, subdivision (c).

We need not and thus do not resolve the parties' disagreement as to the application of articles XIII C or XIII D because, irrespective of which article applies, the well registration charge was unconstitutionally imposed.[13] At bottom, for the well registration charge to pass constitutional muster, it must either be a property-related service fee that

---

[13] We note article XIII C incorporates the property-related service fee exception under article XIII D, section 6, as an exception to a tax. (Art. XIII C, § 1, subd. (e)(7).)

meets the requirements under article XIII D, section 6, or a regulatory fee within the meaning of article XIII C, section 1(e)(3). The well registration charge qualifies as neither.

A.      *Further Legal Background*

"Under the California Constitution, as amended by a series of voter initiatives, local government taxes, fees, charges, and other exactions are subject to several requirements and restrictions." (*City of San Buenaventura v. United Water Conservation Dist.* (2017) 3 Cal.5th 1191, 1199 (*City of San Buenaventura*).) The first of these initiatives was Proposition 13, passed by the voters in 1978, which added article XIII A to the California Constitution. "Proposition 13 generally (1) limited the rate of any ad valorem tax on real property to 1 percent; (2) limited increases in the assessed value of real property to 2 percent annually absent a change in ownership; (3) required that ' "any changes in State taxes enacted for the purpose of increasing revenues collected pursuant thereto whether by increased rates or changes in methods of computation" ' must be approved by two-thirds of the Legislature; and (4) required that special taxes imposed by cities, counties and special districts must be approved by a two-thirds vote of the electors." (*Schmeer v. County of Los Angeles* (2013) 213 Cal.App.4th 1310, 1317.) " 'To prevent local governments from subverting its limitations, Proposition 13 also prohibited counties, cities, and special districts from enacting any special tax without a two-thirds vote of the electorate.' " (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 836.)

"Courts uniformly held, however, that article XIII A … did not restrict local governments' ability to impose 'legitimate special assessments'—that is, charges levied on owners of real property directly benefited by a local improvement to defray its costs. [Citation.] In part to close this perceived loophole, voters in 1996 passed Proposition 218, which, among other things, ' "buttresse[d] Proposition 13's limitations on ad valorem property taxes and special taxes by placing analogous restrictions on

18

assessments, fees, and charges." ' " (*City of San Buenaventura*, *supra*, 3 Cal.5th at pp. 1199-1200.) Proposition 218 added articles XIII C and XIII D to the California Constitution.

Under article XIII D, section 3, only four types of local property taxes, assessments, fees, or charges are allowed if they are assessed "upon any parcel of property or upon any person as an incident of property ownership" and meet specified substantive and procedural restrictions: (1) an ad valorem property tax imposed under article XIII and article XIII A; (2) a special tax receiving a two-thirds vote under section 4 of article XIII A; (3) an assessment imposed under Proposition 218; and (4) a property-related service fee or charge imposed under Proposition 218. (Art. XIII D, §§ 3, subd. (a), 4 [procedures and requirements pertaining to assessments], 5 [exempt assessments based on effective date], 6 [procedures and requirements pertaining to property-related service fees and charges]; *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles*, *supra*, 24 Cal.4th at p. 837.) If a tax, assessment, fee, or charge does not meet one of the enumerated four exceptions, it is unconstitutional. (Art. XIII D, § 3, subd. (a).)

Article XIII C, added by Proposition 218, "restricts the authority of local governments to impose taxes by, among other things, requiring voter approval of all taxes imposed by local governments." (*City of San Buenaventura*, *supra*, 3 Cal.5th at p. 1200.)[14] One year after the voters passed Proposition 218, our Supreme Court considered whether fees imposed by the Legislature on manufacturers and others contributing to environmental lead contamination were " 'taxes enacted for the purpose of increasing revenues' " under former article XIII A, section 3, and therefore subject to

---

[14] Article XIII C provides that all taxes imposed by local governments are either general taxes or special taxes (art. XIII C, § 2, subd. (a)), and requires all general taxes to be approved by a majority vote (*id.*, subd. (b)) and all special taxes to be approved by a two-thirds vote (*id.*, subd. (d)).

the requirement of a two-thirds vote of the Legislature.  (*Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866, 873 (*Sinclair Paint Co.*).)  The court explained that "the distinction between taxes and fees is frequently 'blurred,' taking on different meanings in different contexts" but special tax cases generally fall into "three general categories of fees or assessments:  (1) special assessments, based on the value of benefits conferred on property; (2) development fees, exacted in return for permits or other government privileges; and (3) regulatory fees, imposed under the police power."  (*Id*. at p. 874.)

Our Supreme Court explained that special assessments and development fees satisfying certain requirements and regulatory fees that did not exceed the reasonable cost of providing the services for which the fees were charged and were not levied for any unrelated revenue purposes were not special taxes subject to the two-thirds voting requirement of article XIII A, section 4.  (*Sinclair Paint Co.*, *supra*, 15 Cal.4th at pp. 874-876.)  The court held that the lead fees imposed in that case were regulatory because the legislation required manufacturers and others whose products had exposed children to lead contamination to bear a fair share of the cost to mitigate the adverse health effects that their products created in the community.  (*Id*. at p. 877.)  The fee was further deemed regulatory because it was "comparable in character to similar police power measures imposing fees to defray the actual or anticipated adverse effects of various business operations."  (*Ibid*.)

Reviewing the lead fee "[f]rom the viewpoint of general police power authority," our Supreme Court saw "no reason why statutes or ordinances calling on polluters or producers of contaminating products to help in mitigation or cleanup efforts should be deemed less 'regulatory' in nature than the initial permit or licensing programs that allowed them to operate."  (*Sinclair Paint Co.*, *supra*, 15 Cal.4th at p. 877.)  The court explained the lead fee was regulatory because it " 'regulates' future conduct by deterring further manufacture, distribution, or sale of dangerous products, and by stimulating

20

research and development efforts to produce safer or alternative products." (*Ibid*.) The court remanded the matter, however, to afford Sinclair Paint Company the opportunity "to show that no clear nexus exists between its products and childhood lead poisoning, or that the amount of the fees bore no reasonable relationship to the social or economic 'burdens' its operations generated." (*Id*. at p. 881.) In other words, there must be a nexus between the amount of the fee and the cost of the service for which the fee is charged. (*Ibid*.)

In 2010, the voters passed Proposition 26 to address concerns that state and local governments had " 'disguised new taxes as "fees" ' to increase revenues without having to follow constitutional voting requirements for taxes." (*City of Gridley v. Superior Court* (2024) 104 Cal.App.5th 1201, 1209; *California Chamber of Commerce v. State Air Resources Bd.* (2017) 10 Cal.App.5th 604, 632 [Prop. 26 was passed in response to perceived efforts to "bypass the spirit of Proposition 13 and related measures, … by couching exactions as regulatory fees exempt from a supermajority vote"].) In particular, "[t]he initiative was an effort to close perceived loopholes in Propositions 13 and 218 and was largely a response to *Sinclair Paint [Co.]*, *supra*, 15 Cal.4th 866." (*Schmeer v. County of Los Angeles*, *supra*, 213 Cal.App.4th at p. 1322.)

Proposition 26 made two changes to article XIII C. First, it defined the term " 'tax,' " which had not been constitutionally defined before, to broadly include "any levy, charge, or exaction of any kind imposed by a local government," subject to seven enumerated exceptions. (Art. XIII C, § 1, subd. (e); *City of Gridley v. Superior Court*, *supra*, 104 Cal.App.5th at p. 1209.) If a levy, charge, or exaction meets the requirements of an exception, it "is not a tax as a matter of law." (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1048.) On the other hand, if a levy, charge, or exaction imposed by a local government does not satisfy one of the seven exceptions and was not properly approved by the voters, then it "is an unconstitutional,

invalid tax." (*Howard Jarvis Taxpayers Assn. v. Coachella Valley Water Dist.* (2025) 108 Cal.App.5th 485, 504.)

Second, Proposition 26 placed on local governments the burden of proving by a preponderance of the evidence that: (1) the levy, charge, or exaction is not a tax, i.e., that it falls within one of the seven enumerated exceptions in article XIII C, section 1(e); (2) the amount is no more than necessary to cover the reasonable costs of the governmental activity; and (3) the manner in which those costs are allocated to a payor bears a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity. (Art. XIII C, § 1, last par.) We do not address whether the District met its burden of proof as to the latter two requirements in the last paragraph of article XIII C, section 1 (i.e., reasonableness and proportionality) because we conclude the District did not clear the initial hurdle of showing the charge meets one of the exceptions in article XIII C, section 1(e).

B.    *The Well Registration Charge Is Not a Property-related Service Charge Under Article XIII D, Section 6*

Citing *City of San Buenaventura*, *supra*, 3 Cal.5th at page 1208, the parties agree that the well registration charge is not excepted under article XIII D, section 6 because it was not imposed "to pay for the costs of providing a service to a parcel of property."[15] We accept the parties' concession and next consider whether the well registration charge falls within the article XIII C, section 1(e)(3) regulatory fee exception. (*City of San Buenaventura*, at p. 1208 ["conservation of limited groundwater stores, and remediation of the adverse effects of groundwater extraction" for the benefit of the public was not a service "directed at any particular parcel or set of parcels in the same manner as, for

---

[15]  The District does not address the other three exceptions found in article XIII D, section 3, subdivision (a). Accordingly, neither do we.

22

example, water delivery or refuse collection services" and thus not a " 'property-related service' " under Prop. 218].)

C.    *The Well Registration Charge Is Not a Charge Imposed for Regulatory Costs Within the Meaning of Article XIII C, Section 1(e)(3)*

The District asserts the well registration charge is excepted from the definition of a tax under article XIII C, section 1(e)(3) and not subject to voter approval because it was "imposed for the reasonable regulatory costs to a local government for issuing licenses and permits, performing investigations, inspections, and audits, enforcing agricultural marketing orders, and the administrative enforcement and adjudication thereof" (regulatory fee exception).  The regulatory fee exception generally encapsulates pre-Proposition 26 case law pertaining to regulatory fees.  (*City of San Buenaventura*, *supra*, 3 Cal.5th at p. 1210.)[16]

We independently review whether the well registration charge falls within an exception under article XIII C, section 1, subdivision (e).  (*Great Oaks Water Co. v. Santa Clara Valley Water Dist.* (2025) 110 Cal.App.5th 260, 282-283 [the interpretation and application of a constitutional provision raise questions of law subject to independent review].)  When construing constitutional provisions, including those enacted through voter initiative, we apply the same principles employed for statutory interpretation.  (*Id.* at p. 282.)  " ' "Our primary concern is giving effect to the intended purpose of the provisions at issue." [Citation.]  "When, as here, the voters enacted the provision, their intent governs." ' [Citations.]  'To determine the voters' intent, we analyze the text of the provision in its relevant context, "ascribing to words their ordinary meaning" and "taking

_____

[16]  Our Supreme Court has twice declined to address the extent of the difference between Proposition 26's description of the categories of charges imposed for reasonable regulatory costs as compared to the discussion of such fees in *Sinclair Paint Co.*  (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 262 & fn. 5; *City of San Buenaventura*, *supra*, 3 Cal.5th at p. 1210, fn. 7.)  We need not address the difference here either.

account of related provisions and the structure of the relevant statutory and constitutional scheme." ' " (*Ibid*.) "New provisions of the Constitution must be considered with reference to the situation intended to be remedied or provided for." (*League of Women Voters of California v. McPherson* (2006) 145 Cal.App.4th 1469, 1481.) When language is ambiguous, we consult " ' "other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." ' " (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901.)

As previously noted, the language of Proposition 26 is drawn in large part from pre-Proposition 26 case law distinguishing between taxes subject to article XIII A, on the one hand, and regulatory and other fees, on the other. (*City of San Buenaventura*, *supra*, 3 Cal.5th at p. 1210.) Prior to Proposition 26, our Supreme Court explained that regulatory fees were "not dependent on government-conferred benefits or privileges" but instead imposed under the agency's police power (as opposed to its taxing power). (*Sinclair Paint Co.*, *supra*, 15 Cal.4th at p. 875.) In that regard, "[a]s long as the [regulations] are not in conflict with general laws, the power to impose valid regulatory fees … exists pursuant to the direct grant of police power under article XI, section 7, of the California Constitution." (*Mills v. County of Trinity* (1980) 108 Cal.App.3d 656, 662; see also *Sinclair Paint Co.*, *supra*, 15 Cal.4th at p. 879 [a local government may exact regulatory fees under its police power "for the purpose of legitimate regulation"].)[17] Use of "police power is constitutional only if adopted to promote the health, safety, and welfare of the public as a whole." (*Mills*, at p. 661, citing *Euclid v. Ambler Realty Co.* (1926) 272 U.S. 365, 387 & *Associated Home Builders etc. Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 604.)

---

[17] As stated *ante*, we presume without deciding that the District's adoption of the well registration charge does not conflict with general laws.

24

Examples of regulatory fees appropriately imposed prior to Proposition 26 included fees "charged to alcoholic beverage sale licensees to support pilot project to address public nuisances associated with those sales," a "landfill assessment based on land use to reduce illegal waste disposal," a "waste disposal surcharge imposed on waste haulers," a charge based on an "emissions-based formula for recovering direct and indirect costs of pollution emission permit programs," and "fees for inspecting and inventorying on-premises advertising signs." (*Sinclair Paint Co.*, *supra*, 15 Cal.4th at p. 876 [collecting cases].) A local government could exact such regulatory fees under its police power "for the purpose of legitimate regulation … if the fees do not exceed the reasonably necessary expense of the regulatory effort" (*id*. at p. 879) and if they are "reasonably commensurate with the cost of regulatory activity *from those at whose instance the activity is conducted*" (*Mills v. County of Trinity*, *supra*, 108 Cal.App.3d at pp. 661-663, italics added; *Sinclair Paint Co.*, at p. 877 [police power measures impose "fees to defray the actual or anticipated adverse effects of various business operations"]). For example, " '[i]f a business imposes an unusual burden on city services, a municipality may properly impose fees pursuant to its police powers' to assure that the persons responsible 'pay their fair share of the cost of government.' " (*Sinclair Paint Co.*, at p. 879.) Shifting the costs from the public to those persons deemed responsible for the services provided is "a reasonable police power decision." (*Ibid*.)

Pre-Proposition 26 case law further identifies another factor for consideration in distinguishing between taxes and regulatory fees—whether the charge is compulsory.[18] "Most taxes are compulsory rather than imposed in response to a voluntary decision to develop or to seek other government benefits or privileges." (*Sinclair Paint Co.*, *supra*, 15 Cal.4th at p. 874.) In contrast, regulatory fees are generally not compulsory because

_____

[18] We do not suggest that the mandatory nature of a charge is a deciding factor between a tax and a regulatory fee.

25

"fee payers have some control both over when, and if, they pay any fee, i.e., when or if they elect to engage in a regulated activity, and/or the amount of the fee they are compelled to pay. For example, fee payers can modify their conduct to pollute less or consume less water." (*California Building Industry Assn. v. San Joaquin Valley Air Pollution Control Dist.* (2009) 178 Cal.App.4th 120, 132.)

Consistent with the foregoing, our Supreme Court recently explained that the " 'imposed for' " language in article XIII C, section 1(e)(3) "refer[s] to situations where a payor pays a fee in exchange for the provision of government services *that allow it to operate in a regulated sphere*." (*Zolly v. City of Oakland* (2022) 13 Cal.5th 780, 795, italics added, citing Voter Information Guide, Gen. Elec. (Nov. 2, 2010) analysis of Prop. 26 by Legis. Analyst, p. 58 (Voter Guide)[19] [distinguishing between charges that "benefit the public broadly" versus those "providing services directly to the fee payer"]; see also *California Building Industry Assn. v. State Water Resources Control Bd.*, *supra*, 4 Cal.5th at p. 1046 [to qualify as a regulatory fee, the amount of the fee must bear "a reasonable relationship *to the burdens created by the fee payers' activities or operations*" (italics added)].)

Although perhaps the foregoing statement by our Supreme Court could be considered dicta, it is consistent with pre-Proposition 26 case law and the explanation in the Voter Guide that regulatory fees pertain to "programs that place requirements on the activities of businesses or people to achieve particular public goals or help offset the public or environmental impact of certain activities." (Voter Guide, *supra*, analysis of

---

**19** We take judicial notice of the Voter Guide for the November 2, 2010 General Election on our own motion. (Evid. Code, § 459 [reviewing court may take judicial notice of any matter specified in Evid. Code, § 452]; Evid. Code, § 452, subds. (c) [judicial notice may be taken of official acts of the executive department of California], (h) [judicial notice may be taken of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"].)

26

Prop. 26 by Legis. Analyst, p. 56; see *ibid*. ["[f]ees and charges" in comparison to taxes, which "are typically used to pay for general public services such as education, prisons, health, and social services," "typically pay for a particular service or program benefitting individuals or businesses"]; *id*., text of Prop. 26, § 1, subd. (e), p. 114 ["Fees couched as 'regulatory' but which exceed the reasonable costs of actual regulation or are simply imposed to raise revenue for a new program and are not part of any licensing or permitting program are actually taxes and should be subject to the limitations applicable to the imposition of taxes"].) As explained in the Voter Guide, when a charge is used for public goals "*rather than providing a direct and distinct service to the business owner*," it may be considered a tax. (*Id*., analysis of Prop. 26 by Legis. Analyst, p. 58, italics added; compare *Southern California Edison Co. v. Public Utilities Com.* (2014) 227 Cal.App.4th 172, 200 [charge imposed by the Public Utilities Commission not a tax when it "may incidentally provide a social benefit to the public at large" but "a discrete group, namely the utility corporations' ratepayers, [were] specifically benefitted"] with *Morning Star Co. v. Board of Equalization* (2011) 201 Cal.App.4th 737, 755 [charge was a tax because it was "not regulatory" but instead "monetary" when it did not "seek to regulate the Company's use, generation or storage of hazardous material but to raise money for the control of hazardous material generally"].)

From our review of pre-Proposition 26 case law, the information provided to voters in the Voter Guide, and our Supreme Court's statement in *Zolly v. City of Oakland*, *supra*, 13 Cal.5th at page 795, we conclude a compulsory charge imposed on all landowners within the County regardless of any activity undertaken by the landowners that creates a burden on the local government or to receive a specific benefit from the government is not a regulatory fee under article XIII C, section 1(e)(3) because it is not like the charges that were deemed regulatory fees under a local government's police power prior to Proposition 26. (See *Sinclair Paint Co.*, *supra*, 15 Cal.4th at p. 876 [collecting cases pertaining to pre-Prop. 26 regulatory fees]; Voter Guide, *supra*, analysis

27

of Prop. 26 by Legis. Analyst, p. 56 ["[f]ees and charges" in comparison to taxes, which "are typically used to pay for general public services such as education, prisons, health, and social services," "typically pay for a particular service or program benefitting individuals or businesses"]; *id*., text of Prop. 26, § 1, subd. (e), p. 114 ["Fees couched as 'regulatory' but which exceed the reasonable costs of actual regulation or are simply imposed to raise revenue for a new program and are not part of any licensing or permitting program are actually taxes and should be subject to the limitations applicable to the imposition of taxes"].)

The District's revised position in its reply brief that the regulated activity triggering the well registration charge is the "actual or potential use of groundwater" rings hollow, as noted *ante*. The District merely cites to a page in a technical memorandum prepared by its consultant, which makes no such statement. The District identifies no *evidence* in the record indicating that all landowners in the County have or could install groundwater extraction facilities subject to regulation. Shifting the costs of a well registration program from those who own or operate groundwater extraction facilities to the public at large is inapposite of the District's police power and would expand the types of charges that qualify as regulatory fees, in direct contravention of the voters' intent in passing Proposition 26. (*Sinclair Paint Co.*, *supra*, 15 Cal.4th at p. 879 [shifting the costs from the public to those persons deemed responsible for the services provided is "a reasonable police power decision" because it assures "the persons responsible 'pay their fair share of the cost of government' "].)

We understand the important public policies at issue, as stressed by the District and amici. But the importance of the Act does not resolve the question before us. Our function is to determine whether the charge is a tax under the California Constitution. No statutory purpose, however important, can override a constitutional mandate. Because the well registration charge has no nexus to the provision of government services that allow the landowners to operate in a regulated sphere, it does not fall within the

28

regulatory fee exception to a tax under article XIII C, section 1(e)(3). (*Zolly v. City of Oakland*, *supra*, 13 Cal.5th at p. 795.)

### III

### *Garst's Refund Request Is Barred*

The District argues that Garst's request for a refund is procedurally barred for failure to comply with the Government Claims Act.[20] Garst argues the Government Claims Act is inapplicable because he is not seeking money or damages but rather a refund of the unconstitutional tax. (Quoting *County of Sacramento v. Lackner* (1979) 97 Cal.App.3d 576, 587 ["[a]n action in traditional mandamus, which seeks an order compelling an official to perform a mandatory duty, is not an action against the state for money, even though the result compels the public official to release money wrongfully detained"].) He further asserts his refund request is authorized under Revenue and Taxation Code section 5096, subdivision (c). We agree with the District that Garst's request for a refund is barred.

Neither Proposition 218 nor Proposition 26 contains a specific refund procedure, and we have rejected the District's assertion that the refund procedure in section 10726.6(d) applies.[21] We also disagree with Garst that Revenue and Taxation Code section 5096, subdivision (c) authorizes a refund. We do not address the parties' dispute

---

[20] The District acknowledges, however, that the Government Claims Act does not bar Garst's constitutional claims. (Citing *Carachure v. City of Azusa* (2025) 110 Cal.App.5th 776, 785, 789 [when a statute requires a taxpayer to pay a fee under protest and file a refund claim before filing a court action for a refund but does not require the same of a plaintiff challenging the constitutionality of the fee, the plaintiff's suit asserting a constitutional claim is not barred by the statute]; *Plata v. City of San Jose* (2022) 74 Cal.App.5th 736, 749, 750.)

[21] The District also appears to argue for the first time in its reply brief that Garst was required to file a suit in validation under section 10726.6(c) to seek a refund. (§ 10726.6, subds. (a), (c).) As explained *ante*, section 10726.6 is inapplicable here, and we thus do not address the argument.

29

as to the scope of the property taxes governed by the refund procedure in Revenue and Taxation Code section 5096, subdivision (c) because it is immaterial to the disposition of this case.

To the extent Revenue and Taxation Code section 5096 could apply to an unconstitutional tax under articles XIII C or XIII D, it is undisputed that Garst did not comply with the mandatory prelitigation requirements in that statutory scheme, barring any retrospective request for a refund. (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299 [a party must show strict compliance with the administrative procedures established under Rev. & Tax. Code, §§ 5096-5170 to seek a refund]; Rev. & Tax. Code, § 5097 [identifying specific claims presentation procedure].)

Absent the application of any other specific refund procedure for a local tax, the Government Claims Act governs. (*Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 824, quoting *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 629 ["except as to '[c]laims under the Revenue and Taxation Code or other statute prescribing procedures for the refund … of any tax,' the Legislature has determined that the Government Claims Act applies"]; *Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241, 251 [a "class claim … for a tax refund against a local governmental entity is permissible" under the Government Claims Act "in the absence of a specific tax refund procedure … in an applicable governing claims statute"].) The Government Claims Act "established a standardized procedure for bringing claims against local governmental entities," including claims presentation requirements (*Ardon*, at p. 246) when money is sought (*Coziahr*, at p. 824).

Courts have applied the Government Claims Act's requirements to refund requests in Proposition 218 actions because Proposition 218 does not contain a specific refund procedure. (See, e.g., *Plata v. City of San Jose*, *supra*, 74 Cal.App.5th at pp. 748-749 [suit barred because Government Claims Act claim did not include art. XIII D, § 6, subd.

30

(b) allegations]; *Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 937 [Prop. 218 claim untimely under the Government Claims Act]; *Coziahr v. Otay Water Dist.*, *supra*, 103 Cal.App.5th at p. 824 [refund for a Prop. 218 violation is authorized by the Government Claims Act and recoverable in mandate].)  Because Proposition 26, like Proposition 218, does not provide a specific refund procedure for illegally imposed and collected taxes, and absent a finding that another statutory provision applies, we conclude the Government Claims Act applies when a refund (i.e., money) is sought from a local government for a Proposition 26 violation as well. (See *Howard Jarvis Taxpayers Assn. v. Coachella Valley Water Dist.*, *supra*, 108 Cal.App.5th at pp. 514-516 [Government Claims Act governed a Prop. 26 refund request when Health & Saf. Code, § 5472, pertinent to exactions imposed for services and facilities in connection with sanitation and sewerage systems, did not apply].)

Garst's reliance on *County of Sacramento v. Lackner*, *supra*, 97 Cal.App.3d 576 is misplaced.  In that case, the court noted the question of compliance with the Government Claims Act was not raised in the trial court but, assuming arguendo it had been raised, the Government Claims Act did not apply to a writ proceeding in which the petitioner sought "to compel the state to disburse funds in the manner provided by the Medi-Cal statutes." (*Lackner*, at pp. 587-588.)  The court concluded that, because the petitioner brought an action in mandamus to compel a ministerial act to release funds as required by statute, the petitioner did not seek "damages from the sovereign."  (*Id.* at p. 588.)  We agree with the District that the case is inapposite because Garst has no statutory or constitutional entitlement to a refund and is not enforcing a ministerial duty.

31

Because it is undisputed that Garst did not file a Government Claims Act claim, he cannot pursue a refund of the well registration charge.[22] (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738 [Government Claims Act presentation requirements "enable the public entity to engage in fiscal planning for potential liabilities"].) We accordingly modify the judgment and strike the provision mandating the District to refund Garst and all other taxpayers the amount of the well registration charges. (*Cowdery v. London etc. Bank* (1903) 139 Cal. 298, 303 [reviewing court may modify the judgment to eliminate the portion thereof constituting material error]; *People ex rel. Department of Public Works v. Lagiss* (1963) 223 Cal.App.2d 23, 44 [same].)

## DISPOSITION

The judgment is modified to strike the provision mandating the District to refund Garst and all other taxpayers the well registration charges. In all other respects, the judgment is affirmed. Garst shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3), (5).)

/s/
BOULWARE EURIE, J.

We concur:

/s/
RENNER, Acting P. J.

/s/
FEINBERG, J.

---

[22] We note that Garst requested a refund of the tax only on his own behalf, and nothing in the parties' briefs cites or discusses any request for class certification with respect to a refund on behalf of other taxpayers.